### M. E. ROBERTSON, BY NEXT FRIEND v. R. A. COLE.

It is a well established principle that a marriage procured by force or fraud is null and void.

Where it was found by the jury, in an action to annul a marriage ceremony, that at the date of the ceremony, the plaintiff was under eighteen years of age; that her parents did not consent to her marriage with the defendant or to the issue of license therefor; and that the license was procured by the fraudulent represent-ation and false swearing of the defendant to the Clerk of the County Court; and that the plaintiff immediately on information thereof and before cohabitation, repudiated said ceremony, and abandoned the defendant's company, the Court declared and adjudged the ceremony to be void.

Appeal from Cherokee. This is a suit for a divorce or to
have a marriage declared null and void, and the petition rep-
resents that the plaintiff, Missouri E. Robertson, is a minor,
susceptible and confiding in her nature, and, from the manner
in which she has been reared, entirely unsuspecting, and is, in
fact, so unsophisticated, that, in all the important affairs of
life, she is incapable of exercising an intelligent discretion.

The petition alleges that there was a fraudulent combination

and confederacy to destroy the peace and temporal welfare of the said Missouri E., by procuring her marriage with the defendant, without the consent of her parents, who are both living, and reside in Cherokee county ; that by false representations she was decoyed from her father's house to a fishing excursion, and that there, upon entreaties and importunities and representations that her parents would consent, she finally, to avoid further importunities, gave her consent to the marriage, not intending at that time to comply with her promise; but that the defendant, on the same day, clandestinely and without the consent of the said Missouri E. or her parents, repaired to the Clerk of the County Court and fraudulently obtained from said Clerk a marriage license, by falsely representing that the parents of Missouri E. had given their consent, and by falsely swearing that the said Missouri was of the age of eighteen years or more ; that the said Richard A. returned with the license thus obtained, and by continued importunities of himself and others, preventing her from having communication with her parents, representing to her that she need not fear her parents' displeasure, giving her no time for reflection, and finally hurried her into the marriage ceremony, without even her own free consent, and against the will and wishes of her parents. And she solemnly avers that though she rehearsed the marriage vows, yet that her consent was not freely given, but was forced by the unlawful means aforesaid. And she further averred, that immediately after the marriage ceremony aforesaid, the said Cole mockingly told her that true it was they were married, but that he had to swear a lie to procure the license, which conduct was so cruel, outrageous and insupportable in its nature, that even had she married him willingly, she could not longer live with a husband who could thus outrage her feelings. And she avers, that immediately after her marriage, she escaped to her father and threw herself under his protection, and then and there absolutely refused, and still does' and always will refuse, to live with or maintain the relation of wife to the said Cole, for whom she

never did, and never can entertain any affection. The Court charged the jury to ascertain whether the license was obtained by fraudulent misrepresentation of defendant.

2nd. Whether the parents of the plaintiff did or did not consent to the marriage and issuance of said license. 3rd. The age of the plaintiff at the date of the marriage.

The Court declind to charge on the other allegations of the petition, as in his opinion such charge would be an abstraction.

The jury found that at the date of the marriage, the plaintiff was about fifteen years and seven months old; that her parents never did consent to her marriage with the defendant or to the issuance of license therefor, and that the license issued by the fraudulent representation and false swearing of the defendant, to the Clerk of the County Court; and that there was an immediate repudiation of said marriage by the plaintiff.

Upon this verdict and inspection of the petition, the Court decreed that the plaintiff was not entitled to have her marriage with the defendant annulled and set aside, and gave defendant judgment for costs. The plaintiff appealed, and assigns that there was error in the refusal by the Court to adjudge the marriage null and void.

*Anderson* and *Hood*, for appellant. We hold and show that the marriage or ceremony in this cause was a nullity for the following reasons, viz:

1st. Missouri E. Robertson was unable to contract marriage on account of her age (she being but little more than fifteen years old) without the consent of her parents, and their consent was never obtained. (See verdict of jury.) Common Law as to age of parties has no bearing whatever on the case, because supplied by statute. Requisite age of females eighteen years. (See Hartley's Digest, Art. 2442.)

2nd. Marriage is governed by laws where celebrated. Our statutes regulate the whole subject of marriage contracts and governs. Art. 2441, Hartley's Digest, says affirmatively,

" that persons desirous of marrying shall apply to the Clerk," &c., making the issuance of license requisite. Had it been intention of Legislature to allow marriages without license, it never would have been made obligatory, as by Art. 2441, for a party to apply for license, nor would the strenuous restrictions have been thrown round the issuance of license as contained in Art. 2442 Hartley's Digest. License is therefore necessary to a valid marriage. See Bashaw v. The State of Tennessee, 1st vol. Yerger's Reports, where whole doctrine is extensively discussed.

The marriage, then, in this case, was a nullity, because license was obtained by gross fraud, as shown by verdict of jury. And again, the license was issued by a public officer without the least semblance of authority, and contrary to positive law; (See Hartley's Digest, Art. 2442;) Missouri E. Robertson, as shown by verdict, being under eighteen years of age and no consent of her parents given. An act of a public officer done without law, (especially where forbidden,) wholly void. See decisions of your own Court.

3d. Fraud vitiates all contracts. This was fraudulent from its inception.

4th. The marriage contract in this case was never consummated, cohabitation having never taken place between the parties. Missouri E. Robertson immediately after marriage ceremony, (learning the fraud,) repudiated the ceremony.

In cases of illegal or doubtful marriages, Courts of Equity have frequently decreed them null in order to quiet minds of parties, &c.

*Ochiltree & Jennings*, also, for appellant. In addition to the position assumed by my associate attorneys in their brief heretofore filed, I ask leave to submit the following reasons to the consideration of the Court. We are led to the conclusion, from an inspection of the record in this case, that the refusal of the Judge presiding below to enter the necessary decree for the annulling the marriage in this case, was based upon the

idea that his right to decree divorces from the bonds of matrimony was confined to the causes set forth in the act of the Legislature concerning divorce. (Hartley's Digest, page 282.) If these were his reasons, I differ with him entirely. In this State the right to divorce parties from the bonds of matrimony belongs exclusively to the District Court. (Sec. 10, Art. 4, Constitution State of Texas.) The same article gives to the District Court jurisdiction in all matters where the amount in controversy exceeds one hundred dollars, without regard to any distinction between law and equity. The Constitution manifestly intended to confer upon the District Court the highest powers ; to authorize it to take cognizance of every possible class of cases which were taken cognizance of by the different Courts of England which were not incompatible with our institutions. Hence, I contend that the District Court of Texas has the right under the Constitution of the State of Texas, to grant a divorce for any cause which would be considered in the ecclesiastical Courts of England good cause for divorce.

The statute of Texas concerning divorce has reference entirely to causes arising after marriage ; no reference is made to causes which render marriage void *ab initio*. Surely our Legislature did not intend to deny to parties a remedy which upon the discovery of proper legal objections which had existed antecedent to the marriage, would restore quiet and repose to the feelings of those who had discovered too late that there existed insuperable barriers to their connubial happiness.

In this case we find from the special verdict rendered, that the consent of the parents was wanting and that the parties were both of them under the age which the law requires that they should have attained before a license could issue without the consent of the parent. By statute in many of the States, such marriage as this would be considered void or at least voidable at the option of either of the parties inclined to repudiate or avoid the contract. It is laid down as a well settled rule that the contract of marriage, though in England held by the es-

Robertson v. Cole.

tablished Church as a *quasi* sacrament, can be avoided and a decree will be rendered annulling it for fraud.

In Wright v. Wright, this Court have held that any circumstance which would render the living of the parties together insupportable would be good ground for divorce. The murder of her son by her husband was there held sufficient cause to entitle the mother to a divorce. In this case a perjury was committed by the party to obtain the license. Upon the discovery of the baseness of her *quasi* husband she immediately repudiated the marriage, repented her rashness and immediately before any consumation of the marriage, returned to her father's house. A marriage without a license would have been a nullity, the issue might have been legitimate ; but the parties would have been indictable for fornication, or at least the party deceiving the other, if any deception were practiced, would be guilty. If this be so, a license obtained by fraud and perjury is a nullity ; and where the marriage resulting from it, is sought to be repudiated by either party within a reasonable time, the Court will decree accordingly.

HEMPHILL, CH. J. The point for consideration is, whether, under the circumstances, the plaintiff was justified in her immediate repudiation of the marriage, and whether this act, in connection with other facts in the cause, will authorize the Court to pronounce the marriage null and void.

It may be observed, that the provisions of the statute, in relation to the celebration of marriages, are specific and minute in their detail. Certain officers are authorized to celebrate the rites of matrimony between persons legally authorized to marry, males under fourteen years of age, and females under twelve being excepted, who are prohibited to marry. Persons, desirous of marrying, are required to apply to the Clerk of the County Court for a license, to be directed to the persons authorized to officiate at the celebration of marriages, and this shall be authority under which they shall act at such celebrations, and imposing a penalty upon any of such persons as

shall act without such license. The Clerk is prohibited from issuing a license without the consent of the parents or guardians of the parties applying, unless the parties shall be, in the case of the male, twenty-one, and of the female eighteen years of age; and the Clerk offending herein, is punishable by fine. The Clerk is also required to record all licenses issued by him, and the officer, who solemnizes the rites, is required to make return thereof, endorsed upon the license, which shall likewise be recorded. (Art. 2440, 41, 42, 43.)

It may, however, possibly be the law—at least, it may be admitted as a point not necessary to be controverted in this case—that these requisitions are but directory, and that the consent of parties over age would, of itself without any peculiar ceremonies or statutory formalities, be sufficient to give validity to marriages. The statute has not, in terms, declared that marriages, for the want of such formalities, shall be null and void. But, admitting that they are not nullities, it does not follow that persons, desirous of marrying, would voluntarily disregard or contemn the law, or desire to enter the marriage union in any other mode than that prescribed by law. It is not to be presumed, for instance, that a female of tender years would voluntarily enter into that most solemn and important engagement, under authority of a license which she knew to have been procured by fraud and by the perjury of her lover with whom she was about to connect her destinies for life, and especially when this false oath was taken, not in relation to himself, but in relation to her age and condition, and at a time and under circumstances when, in contemplation of law, he may be supposed to be representing her and acting under her instructions and by her authority. It is, perhaps, rarely the case, that both parties apply for the license; but the officer, if he discharges his duty, must be satisfied that both are desirous of marriage and of competent age, or, if not, that the assent of the parents or guardians, has been given. When one alone applies for the license, he is, in contemplation of law, acting not only for himself, but for the other and virtually under her instructions.

Robertson v. Cole.

His crime, then, if he swear falsely in relation to the age or condition of the female whom he represents and for whom he is acting, not only covers himself with infamy, but involves her, at least in her possible apprehensions, in moral though not legal guilt; and can any one doubt, if she were warned previous to the ceremony, of the commission of the crime, but that she would shrink from the marriage as she would from a gulf that had yawned for her destruction?

Whether the marriage as in this case be valid at Common Law, by consent of parties or not, yet the plaintiff, and others in her situation, might very justly be unwilling and refuse to join in the rites, unless under the sanction of the statute; they might decline a marriage which not only could not appear from the proper offices, to have been legally consummated, but which those very offices would show to have been celebrated under licenses obtained, and which could not have been procured otherwise than, by perjury and fraud. The records of those offices, instead of being testimonials of the due, orderly and regular completion of the marriage, would, at least as one of their effects, be perpetual memorials of the shame and infamy in which the marriage originated, and of the malignant auspices under which it was perfected.

If, then, it cannot be doubted, that a woman of virtue and purity would shrink from the marriage ties, if she knew they were about to be imposed on her under a license founded essentially in deceit and falsehood, the question arises whether if immediately after the marriage, she should discover the foul source from which this license was dragged out through the unholy means of which her vows and assent had been wrung from her, may she not, if she act promptly on the discovery, legally repudiate such marriage, as founded in violation of law, in fraud in effect against herself, and in perjury of the most base description, the infamy of which is not confined to the perpetrator, but would be regarded, at least by a woman of acute sensibilities, as extending to herself—and if she do repudiate, immediately and before cohabitation, will the law

force her to return and yield to the embraces of a wretch who has committed perjury to obtain possession of her person and property? Will it chain her down to an engagement corrupt and polluted in its origin, in the frauds, the evasions of law and the perjuries of which she has not participated, in which she has not acquiesced, and which, by every means in her power, she is endeavoring to reject and repel? Certainly the law could not be so cruel and stern in its dictates. It is a well established principle, that a marriage, procured by force or fraud, is null and void. (2 Kent, 76.) Can there be a more flagrant fraud than the one perpetrated in this case? This young woman, without the aid, assistance or advice of her friends or parents, is seduced into a marriage, but on the condition as we may presume, especially from subsequent facts, that it should be consummated with the ceremonial requisites of the law. This was apparently done; but, in fact, the performance was, in its most essential element, but a gross deception. The license under which the officer of the law was officiating, was not issued in good faith or on truthful statements, but on misrepresentations and false oaths. It was fair on its face and was imposed on the plaintiff as one based in truth,—and as carrying with it, all the sanctions of the statute,—and as one which, among the public records, would be an evidence that the marriage was consummated with legal formalities, when in fact, none of these things were true, and the appearance of the document among the public records would or might operate as an enduring stigma and reproach, and as furnishing evidence that the marriage must have been founded in falsehood and consummated in iniquity. Can the law condemn this victim of deception to a perpetual association with the criminal by whom she has been inveigled into what, as to her, should be regarded as a mere mockery of marriage? If so, the boast of the law, that all its partialities expire in its antipathy to fraud, will be but mere idle words, having no foundation in truth. A license, procured by fraud and perjury, will have the same sanction as one based in truth,

although immediately repudiated by the innocent party on whom it is attempted to be imposed. Whether she will or will not, she must be forced to become a virtual accomplice in the crime, and to receive to her embraces one who has polluted himself with perjury in the very act under which he claims the victim as his own. Such, certainly, cannot be the conclusion of any law which has a due regard for its own authority, or for honesty, truth and conscience. The importance of the marriage institution to the welfare of individuals and the best interests of society, is duly estimated by this Court. When fully and fairly consummated, its durability should be an object of high regard, nor should its bonds be torn asunder, unless on clear, substantial, legal grounds. But these rules and principles, although very important, have their just limits. The stability of the marriage relation does not require that marriages, procured by force or fraud, should be held good, nor that it should be so held where the marriage was consummated through the instrumentality of an infamous crime, and was immediately, on discovery and before cohabitation, repudiated by the party that was guiltless of such crime. We are of opinion, that under all the circumstances of this case, the marriage is void, and it is so declared and adjudged.

This decision will not affect cases in which the marriage may have been celebrated under similar circumstances and violations of law with the present, but under which the parties have lived together as man and wife. By such a course of conduct, the innocent party must be supposed to have acquiesced in the frauds and evasions of the law, and in what she might regard, if the false oath related to her capacity, as an insult and indignity offered to herself. The facts would show that she had fully and freely assented to the marriage, notwithstanding her knowledge of the misrepresentations on which it was founded. This assent would give validity to the marriage, and she could not, after acquiescence, attempt its repudiation.

It is hereby ordered, adjudged and decreed, that the judg-

ment of the District Court be reversed, and that the judgment which that Court should have pronounced be here rendered.

Reversed and re-formed.