ANNA M. MOOT, BY HER GUARDIAN GEORGE M. DART, RESPONDENT, *v.* JAY B. MOOT, APPELLANT.

*Marriage — when declared void because the consent of the woman was procured by false and fraudulent representations — Code of Civil Procedure, sec. 1743, sub. 4 — what is the age of legal consent within subdivision 1 of said section — Penal Code, sec. 282.*

The plaintiff, a school girl fifteen years old, while absent from home on a visit to relatives, was induced by the defendant, who was twenty-four years old, and had been employed for about four months upon the farm of the plaintiff's father, to enter the house of a clergyman and have a marriage ceremony performed. The plaintiff having at first refused to be married without the consent of her parents, and because of her youth, the defendant falsely stated to her that her parents knew of the object of his visit and that they would not care or object, and assured her that she need not live with him for a good while, for three or four years, and that the ceremony should be kept secret and that she could continue to reside with her parents and attend school. The marriage was never consummated.

*Held,* that as these representations related to the very essence of the contract, and were false and made with intent to induce the plaintiff to consent, they furnished sufficient grounds to uphold a judgment declaring the marriage contract void, under subdivision 4 of section 1743 of the Code of Civil Procedure, as having been obtained by fraud.

Upon the trial the plaintiff was allowed to show that her parents had not consented to the marriage, against the objection of the defendant that as she had passed the age of consent the consent of her parents was unnecessary.

*Held,* that the evidence was properly admitted to establish the falsity of the representations made by the defendant.

*Quære,* as to whether section 282 of the Penal Code fixes the age of sixteen as "the age of legal consent" for females within the meaning of that term as used in subdivision 1 of section 1743 of the Code of Civil Procedure. (Per FOLLETT, J.)

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

The action was brought to procure a judgment declaring a marriage contract entered into between the plaintiff and defendant void, and annulling the marriage on the ground that the plaintiff had been induced to enter into it by false and fraudulent representations made by the defendant.

The referee found that the representations were to the knowledge of the defendant false and untrue, and were made with the express intention of deceiving and defrauding the plaintiff and of inducing her to marry the defendant, and that the plaintiff was induced to believe from such false statements as aforesaid that by consenting to have such marriage ceremony performed no obligation or duties would be imposed upon her thereby, and she need not live with defendant but could live with her parents and continue going to school as she was then doing.

*Edwin D. Wagner,* for the appellant.

*I. H. Maynard,* for the respondent.

FOLLETT, J.:

Marriage, under the laws of this State, is a *status* which arises from or is initiated by a civil contract. The parties to this action entered into a formal marriage contract, which was repudiated by the plaintiff within two days, was not followed by intercourse of any kind, and the *status* which they formally agreed to enter into has not been, in fact, fully established. The plaintiff seeks to annul the formal contract, upon the ground that she was induced to enter into it by the fraudulent representations of the defendant, and upon the ground that she did not consent, or intend to then enter into the marital relation, the agreement being that the relation should not actually exist until after the lapse of three or four years, and that in the meantime she should reside with her parents. At the date of the contract, the plaintiff had just passed her fifteenth

birthday, was a school girl, residing with her parents, who were farmers. The defendant at the date of the marriage was twenty-four years of age, and was an employee of the plaintiff's father, and had been for about four months, during which time he had lived in the family. During this period the defendant had shown the plaintiff some slight attentions, and upon two occasions had urged her to marry him, but she refused. The attentions and solicitations were unknown to the plaintiff's parents. The day before the ceremony the plaintiff was carried to the village of Roxbury, ten miles distant from her home, and there left by her father to visit her relatives. The defendant, knowing where the plaintiff had gone, left her father's house upon the pretense that he was going to another village on business, and the next morning at an early hour he appeared at the house where the plaintiff was staying. Between eight and nine in the morning the plaintiff was sent by her aunt to do an errand at another house in the village. The defendant followed, and while in the street induced her to enter the house of a clergyman, where, at about nine o'clock in the morning, the ceremony was performed. When first solicited, on this occasion, the plaintiff refused to be married without the consent of her parents, and because of her youth. To overcome the first objection, the defendant told her that her parents knew of his coming to Roxbury and he guessed they knew well enough the object of his visit, and stated that her father had promised him one of his farms and one of his daughters if he would work for him for four years : that her mother had told him he could marry one of her daughters, and he knew that her parents would not care or object. To overcome the second objection, defendant assured her that she need not live with him for a good while, for three or four years, that the ceremony should be kept secret, and that she could continue to reside with her parents and attend the school. The defendant did not deny on the trial that he made the foregoing representations, which the plaintiff swears she relied upon, and all of which were false. That the plaintiff by reason of her immaturity, or mental weakness, did not understand the nature and obligations of the contract, appears from the evidence and is undisputed. She understood that she was not then to become a wife in fact, but at some future date, three or four years later, which understanding

·of the contract was induced by the false representations of the defendant in respect to its nature and obligations. These representations related to the very essence of the contract, and being false, and made with intent to induce the plaintiff to consent, and having induced her to consent, it is sufficient, with the other facts in the case, to uphold the judgment declaring the marriage contract void under the fourth subdivision of section 1743 of the Code of Civil Procedure. (Bish. on M. and D. [5th ed.], §§ 199, 200.) In *Robertson* v. *Cowdry* (2 Western L. J., 191), the vice-chancellor of this State declared an unconsummated marriage contract between a girl of sixteen and a young man of twenty-three, invalid, on the ground that it was entered into upon the agreement that they would not regard each other as husband and wife for two years, and not until their parents' consent had been obtained, and a new ceremony performed. (Bish. on M. and D. [5th ed.], § 245.) The fraud in this case was much greater, and more nearly relates to the foundation of the contract than the fraud alleged in *Hull* v. *Hull* (15 Jurist, 710 ; S. C., 5 Eng. L. and Eq. R., 589), where the court refused to dismiss the bill. This case, in some of its features, is like *Lyndon* v. *Lyndon* (69 Ill., 43), where an unconsummated marriage contract between an adult servant and a girl of fifteen was annulled, because, among other things, the man procured the marriage license by perjury. In both cases the contract was brought about by means of a felony. (See, also, *Robertson* v. *Cole*, 12 Texas, 356.)

On the trial the plaintiff was allowed to show that her parents had not consented to the marriage, over the defendant's objection and exception ; that she having passed the age of consent, the consent of her parents was unnecessary : for which reason it was, and it is, urged the evidence was incompetent and immaterial.

By the common law males may marry at the age of fourteen and females at the age of twelve. (2 Kent's Com., 78 ; 2 Steph. Com. [8th ed.], 243.) Section 2 of chapter 8, title 1 of part 2 of the Revised Statutes (2 R. S., 138), fixed the age of consent at seventeen for males, and at fourteen for females, but the section was repealed by chapter 320, Laws 1830. Section 26 of chapter 1, title 3 of part 4 of the Revised Statutes (2 R. S. 664), made the taking of a female under the age of fourteen years from her father, mother or guardian, without

their consent for the purpose of marriage, a felony. By chapter 257, Laws 1841, the courts were authorized to annul a marriage contract entered into in violation of the section of the Revised Statutes last cited; but this act was repealed by chapter 245, Laws 1880, it having been been superseded by the Code of Civil Procedure. Section 1743 of the Code provides that a marriage contract may be annulled because "one or both of the parties had not attained the age of legal consent." The age of legal consent is not fixed by the statutes of this State (*Bennett* v. *Smith*, 21 Barb., 439), unless, as to females, it is fixed by implication by section 282 of the Penal Code. This section, as it stood at the date of this marriage (prior to the amendment of March 21, 1884), provided: "A person who takes a female under the age of sixteen years, without the consent of her father, mother, guardian or other person having legal charge of her person, for the purpose of marriage,   *   *   *   is guilty of abduction, and punishable by imprisonment for not more than five years, or by a fine of not more than one thousand dollars, or by both."

Without determining whether the Penal Code fixes the legal age of consent of females at sixteen, and so brings the case within the first subdivision of section 1743 of the Code of Civil Procedure above quoted, it was not error to admit the evidence. It cannot be successfully contended that the felony consists only in taking "for the purpose of marriage," and if the purpose is accomplished, that a felony is not committed. A contract, the making of which is a felony, is void. Such is the general rule, but whether a marriage contract so made may be declared void under our statute is not determined. Defendant's statement that he had talked with the plaintiff's parents, and inducing her to believe that they had tacitly consented to the marriage, was one of the means by which he induced her to consent to the ceremony, it was a part of his fraudulent scheme and it was not error to permit the falsity of the representations to be shown.

The judgment is affirmed, with costs.

HARDIN, P. J.:

Section 1743 of the Code of Civil Procedure provides that an action may be maintained "to procure a judgment declaring a marriage contract void, and annulling the marriage" when "the consent

of one of the parties was obtained by *force, duress* or *fraud.*" When a proper case is made it is the duty of the court to annul a marriage. (*Ferlat* v. *Gojon,* Hopk. R., 478.) As the plaintiff was under sixteen years of age the defendant had no right to take her away from her people for the purpose of inducing her to marry him. Such taking was abduction. (Penal Code, § 282.) Defendant's representations to her that her parents knew of the intention of the parties to marry, knew of his intention to visit her for such purpose, and that they, respectively, had consented to a marriage between the parties, were false and fraudulent and made with the intent of deceiving the plaintiff, and she was deceived thereby and so led to submit to the request of the defendant and acquiesce in the performance of a marriage ceremony away from the residence of her parents, and without their knowledge that the parties had ever contemplated marriage with each other. Nor did any of plaintiff's relatives know of it or consent thereto.

We cannot regard the acts, sayings and doings of the defendant to induce the plaintiff to consent to the performance of the marriage ceremony, as having any origin in fairness and good faith. They were fraudulent and deceiving. They carried away the young mind of the plaintiff and amounted to moral duress. She did not act upon her own will and principal purpose, but was led therefrom by the acts, sayings and solicitations of the defendant. (*Ferlat* v. *Gojon, supra.*) Plaintiff repudiated the marriage promptly and repented early before any cohabitation, and apparently as soon as she learned of the deception practiced upon her by the defendant. We find *Lyndon* v. *Lyndon* (69 Ill., 43) very much in point in its facts, and we are inclined to agree with the opinion of Chief Justice BREESE and to save the plaintiff from her childish folly and delusion and the consequences which might flow therefrom if the marriage, fraudulently obtained, were enforced. We think the conclusion of the referee should be sustained. There was proof to justify his conclusions upon the facts. Defendant had repeatedly admitted the allegations of the complaint to be true. There being no appeal from the order sustaining the judgment, as our jurisdiction is simply appellate, we cannot review the order. We think it and the judgment which it ratifies should stand.

Judgment affirmed, with costs.

VANN, J. :

The defendant in order to induce the plaintiff, a female under the age of sixteen years, to marry him, represented to her, in effect that both of her parents had consented to such marriage.

The plaintiff relied upon such representation, among others, and was induced thereby to marry the defendant. The representation was false and was made by the defendant with intent to deceive the plaintiff. The marriage was never consummated and the plaintiff promptly repudiated it upon learning of the deception practiced upon her. The said representation was material, because if it was true, the defendant had a lawful right to marry the plaintiff, whereas if it was false he not only had no right to marry her, but was even guilty of a felony in so doing. (Penal Code, § 282.) These facts present every element of fraud, which, when applied to an ordinary civil contract, render it void. They should have the same effect when applied to a marriage contract not followed by cohabitation, in an action to annul a marriage, on the ground that the consent of one of the parties thereto was obtained by fraud. (Code of Civil Pro., §§ 1743, 1750.) When cohabitation has followed the marriage, the interests of society become involved and may prevent courts from interfering, except in an extreme case, as private rights must sometimes yield to public policy. It is unnecessary, however, to now consider that subject.

It was competent to show that the parents of the plaintiff had not consented to her marriage, not because their consent was essential to its validity, but to prove that the representation of the defendant was false.

The judgment should be affirmed, with costs.

Judgment affirmed, with costs.