## LONG v. KINNEY.

**HUSBAND AND WIFE.**—*Mortgage.*—*Marriage of Female Mortgagor to Mortgagee.*—An unmarried woman executed a note and a mortgage on her real estate to secure its payment, and afterward married the payee of the

note, the mortgagee, who, after the marriage, assigned the mortgage and delivered the note to a third person, who brought suit to foreclose the mortgage.

*Held,* that, by the marriage, the debt and mortgage were discharged, and the action could not be maintained.

From the Bartholomew Circuit Court.

*W. W. Herod, F. Winter,* and *F. T. Hord,* for appellant.

*S. Stansifer,* for appellee.

Downey, J.—Action by the appellant against the appellee and Michael Kinney. It is alleged in the complaint that, on the 8th day of January, 1872, said defendant, Eliza Kinney, then Eliza McCabe and sole, executed a mortgage to said Michael Kinney of certain real estate, described in the complaint, to secure the payment, when due, of a certain promissory note, therein mentioned, made by said Eliza McCabe, and payable to said Michael Kinney ; that said Michael Kinney transferred the note, without writing, to the plaintiff, and also transferred the mortgage to him, in writing ; that since the execution of the note and mortgage, the defendants have intermarried, etc. A copy of the note and also of the mortgage is filed with the complaint.

Eliza Kinney answered:

1. No consideration.

2. Partial failure of consideration.

3. The same in another form.

4. That since the execution of the note and mortgage, this defendant and her co-defendant intermarried, and after said marriage her co-defendant assigned and transferred said mortgage and note to the plaintiff.

5. That after the execution of the note and mortgage, the defendant and said Michael Kinney intermarried, and after said marriage said Kinney assigned said note and mortgage to the plaintiff, the note by parol and the mortgage in writing ; that the assignment of the mortgage was made as collateral security for a debt of said Michael to the plaintiff, and the property so mortgaged was at the time and now is her general property and not other.

Long v. Kinney.

The plaintiff replied in denial of the first, second, and third paragraphs of the answer, and demurred to the fourth. The demurrer was overruled, and the plaintiff replied to the fourth paragraph that the real estate described in the mortgage was at the execution of the mortgage, has ever since continued to be, and now is the separate property and estate of said Eliza Kinney, her said husband having no interest therein, and that she, by said mortgage, intended to and did pledge and charge said real estate with said indebtedness.

At this stage of the case, an additional complaint was filed, alleging an indebtedness by parol secured by the same mortgage, an assignment of the mortgage to the plaintiff, etc. A new or additional answer of five paragraphs was filed to this additional complaint. Demurrers were filed to the fifth paragraph of the original complaint and to the fourth and fifth paragraphs of the answer to the additional complaint, and overruled by the court. A demurrer to the reply to the fourth paragraph of the answer to the first complaint was sustained. Upon the demurrers, there was final judgment for the defendant. In the progress of the cause, the name of Michael Kinney silently disappeared. The errors are assigned in the name of Eliza Kinney alone as appellee. The errors assigned relate to the rulings of the court on the demurrers to the fourth and fifth paragraphs of the first, and on the demurrers to the fourth and fifth paragraphs of the answer to the additional complaint, and on the demurrer to the reply to the fourth paragraph of the first answer.

The whole question may be presented thus : Eliza McCabe made a note to Michael Kinney, and executed a mortgage to him on her real estate to secure the payment of the note. Afterward, Eliza and Michael intermarried. Still later, Michael, being indebted to the plaintiff, as security, assigned the mortgage and delivered it and the note to the plaintiff. The plaintiff now seeks to foreclose the mortgage. Eliza insists that, by the intermarriage of herself and Michael, the note and mortgage are avoided, dissolved, or discharged. Had the indebtedness been from Michael to Eliza, a different ques-

tion would have been presented, in consequence of the statute, which declares, that "personal property of the wife held by her at the time of her marriage," etc., "shall remain her own property to the same extent, and under the same rules as her real estate so remains," etc. Acts 1853, p. 57, as set forth in note 2 to p. 295, 1 G. & H. But there is no such statute which attempts to save the rights of action of the husband against the wife on contracts entered into by her before the marriage. The rule as it exists uncontrolled by statutory enactments is thus stated:

"By marriage, the husband and wife are one person in law; that is, the very being or legal existence of the woman is suspended during the marriage, or at least is incorporated and consolidated into that of the husband; under whose wing, protection, and cover she performs everything; and is therefore called in our law-French a *feme-covert, fœmina viro co-operta;* is said to be *covert-baron,* or under the protection and influence of her husband, her *baron,* or lord; and her condition during her marriage is called her coverture. Upon this principle, of a union of person in husband and wife, depend almost all the legal rights, duties, and disabilities, that either of them acquire by the marriage. I speak not at present of the rights of property, but of such as are merely personal. For this reason, a man cannot grant anything to his wife, or enter into covenant with her; for the grant would be to suppose her separate existence; and to covenant with her would be only to covenant with himself; and therefore it is also generally true, that all compacts made between husband and wife, when single, are avoided by the intermarriage." 1 Bl. Com. 442.

"The legal effects of marriage are generally deducible from the principle of the common law, by which the husband and wife are regarded as one person, and her legal existence and authority in a degree lost or suspended, during the continuance of the matrimonial union. From this principle it follows, that at law no contracts can be made between the husband and wife, without the intervention of trustees; for she is considered as being *sub potestate viri,* and incapable of contracting

with him; and except in special cases, within the cognizance of equity, the contracts, which subsisted between them prior to the marriage, are dissolved." 2 Kent Com. 129.

" It is well known, that, at common law, husband and wife are treated, for most purposes, as one person. * * Upon this principle, of the union of person in husband and wife, depend almost all the legal rights, duties, and disabilities which either of them acquire by or during the marriage. For this reason, a man cannot grant anything to his wife, or enter into a covenant with her ; for the grant would be to suppose her to possess a distinct and separate existence. And, therefore, it is also generally true, that contracts made between husband and wife, when single, are avoided by the intermarriage." Story Eq., sec. 1367.

" And first, in regard to contracts between husband and wife. By the general rules of law, as has been already stated, the contracts made between husband and wife before marriage, become, by their matrimonial union, utterly extinguished. Thus, for example, if a man should give a bond to his wife, or a wife to her husband, before marriage, the contract created thereby would, at law, be discharged by the intermarriage." Story Eq., sec. 1370.

To the rule thus laid down there are exceptions, which were recognized and enforced mostly in courts of equity. Such are marriage settlements, and the like, the performance of which is intended to take place after the marriage. Even at law, a bond by a husband to his intended wife, upon a condition not to be performed in his lifetime, would not be extinguished by the intermarriage. Other instances, by way of illustration, might be stated. The case under consideration cannot be regarded as coming within any of the exceptions.

We do not think that the fact that the indebtedness in this case was secured by mortgage on the real estate of the wife can make any difference. The debt is the principal thing. The mortgage is only an incident. Whatever satisfies or extinguishes the debt, discharges the mortgage.

So far as the argument against the application of the general rule in this case is based on the statutory provision that

when an action is between herself and her husband, the wife may sue or be sued alone (2 G. & H. 41, sec. 8), it proves little, for the reason that this was the rule before, in equity. Story Eq., sec. 1368. Possibly a reason for the rule may be found in the fact, that, by the marriage, the husband became entitled to the wife's choses in action, which would include a debt due from him to her, as well as a debt due to her from any other person, and became bound to pay her debts contracted while sole, and therefore would be bound to pay the debt to himself, as well as a debt to any other person.

While, under the present statute, he may not be entitled to her choses in action, on account of the statute to which we have already referred, yet he is bound to pay her debts to the extent of the means he may have received by her.

But whatever may have been the origin of the rule, it is the law in this State, except so far as it has been broken in upon by legislation ; and, in the absence of any statute applicable to this particular case, we must apply the rule, and hold that the court committed no error in its rulings.

The judgment is affirmed, with costs.