## GRANT v. GREEN.

1. **Husband and Wife:** INSANE HUSBAND: CARE OF. Where the wife had been appointed by the commissioners of insanity custodian of her insane husband, it was *held*, that she could not recover compensation for her services in that capacity from his estate.

2. ———: ———: CONTRACT. A contract between the guardian of an insane husband and the wife, that the latter shall care for the husband and receive a certain sum for her services, is without consideration and void, since she owes the service independently of any contract. COLE, J., *dissenting*.

*Appeal from Henry Circuit Court.*

SATURDAY, JUNE 19.

THE plaintiff filed in the Henry Circuit Court a petition, claiming of defendant, as the administrator of the estate of her deceased husband, Thomas Grant, the sum of fifteen hundred dollars, for caring for, protecting and managing her husband during an insanity of sixteen months, under an appointment as special custodian, by the commissioners of

insanity of Henry county. The petition alleges that Jasper Grant was appointed by the Circuit Court the guardian of Thomas Grant, during his insanity, and that he entered into a written contract with plaintiff to pay her $75 per month from the estate of said Thomas, for her services as such custodian, which contract is lost. In an amendment to her petition, plaintiff alleges her appointment as special custodian of her husband, and the performance of services thereunder, which were reasonably worth the sum of fifteen hundred dollars. A demurrer to the petition was sustained. Plaintiff appeals.

*H. & R. Ambler*, for appellant.

*Palmer & Jeffries*, for appellee.

DAY, J.—The principal question presented by the demurrer is, that the plaintiff, the wife of the decedent, stood in such legal relation to him that she cannot recover compensation for the service on account of which she claims. At common law it is conceded that the husband was entitled to the services of his wife, and that her personal earnings became his property in virtue of the marital relation. This rule still exists in this State, except in so far as it is modified by statute. It becomes important, therefore, to consider carefully the provisions of our law, which appellee claims have worked so radical a change as to enable the wife to maintain an action against the estate of her husband for services rendered for him in his lifetime.

The plaintiff was, on the 4th day of October, 1870, appointed by the commissioners of insanity of Henry county a special custodian of her insane husband, Thomas Grant. The appointment was made under the provisions of sections 28 and 29, chapter 109, laws of 1870, which in substance provide, that upon proper application to the commissioners in behalf of any person alleged to be insane, and whose admission to the hospital is not sought, the commissioners may direct him to be treated as a private patient, if his relations or friends will obligate themselves to take care of and provide for him, without public charge, and that they " shall appoint some suitable

person a special custodian, who shall have authority, and whose duty it shall be in all suitable ways to restrain, protect, and care for such patient, in such manner as to best secure his or her safety and comfort, and in such manner as to best protect the persons and property of others."

Sec. 31, of the same chapter, provides that "no person supposed to be insane shall be restrained of his liberty by any other person, otherwise than in pursuance of authority obtained as herein required, excepting to such extent and for such brief period as may be necessary for the safety of person and property, until such authority can be obtained."

It cannot be doubted that, aside from the appointment of the plaintiff as special custodian of her husband, it was both her right and her duty to protect and care for her husband in such manner as to best secure his safety and comfort, and protect the property of others, and to that end to restrain him of his liberty for a brief period. But the law is so jealous of the liberty of a subject that it will not permit him to be imprisoned, except for a brief period, and under a controlling necessity, until it has been determined by the proper tribunal that such restraint is necessary. The duty of permanently restraining her husband, and the right to do so, is the only duty which her appointment imposes, and the only right which it confers. Is she, then, entitled to compensation out of the estate of her husband, for services rendered under this appointment? If she is, it must be in virtue of the provisions of our statute.

Appellee relies upon chapter 126, Laws of 1870, which provides substitutes for sections 2505 and 2506 of the Revision, as follows:

"2505. Neither husband nor wife is liable for the debts or liabilities of the other incurred before marriage, and except as herein otherwise declared they are not liable for the separate debts of the other; nor are the wages, earnings, or property of either, nor is the rent or income of such property liable for the separate debts of the other."

"2506. Contracts may be made by a wife, and liabilities

incurred, and the same enforced by or against her to the same extent and in the same manner as if she were unmarried."

In order to a proper understanding of these sections, they must be considered in connection with section 2507 of the Revision, which is as follows: "The expenses of the family, the education of the children, and such other obligations as come within the equity of this provision, are chargeable upon the property of both husband and wife, or of either of them, and in relation thereto they may be sued jointly, or the husband separately."

This section engrafts an exception upon section 2505. Can it be doubted that expenses incurred in the necessary restraint, protection and care of an insane husband come within the equity of the above provision? It must be observed that section 2505 affords just the same exemption to the husband as to the wife. Now, suppose the position of these parties reversed, and the wife insane. Would any one claim that the husband might charge the separate estate of the wife for his services rendered in caring for, protecting and restraining her during her insanity? Or, suppose that the commissioners, instead of appointing plaintiff the special custodian of her husband, had appointed some third person. Then, under section 2507 of the Revision, the separate property of the wife, including her personal earnings, not otherwise exempt from execution, would have been liable for the expense incurred. If, then, her marital relation is such that she is personally liable to another for the care of her husband, upon what principle can she charge the estate of her husband when she renders the service herself? Wherein does the disease of insanity differ in the obligations which it imposes upon a wife or husband, from other maladies? Suppose that, instead of being insane, the husband for sixteen months before his death had been prostrated with consumption, or paralysis, requiring even more care and attention than in his insane condition; could the wife recover of his estate for nursing and caring for him during the period? If she has a valid claim against the estate, then she would have had a valid claim against the husband if he had survived. Would

the maintaining of an action against the husband for nursing him in sickness, greatly promote the harmony of the marital relation, or tend to increase domestic happiness and comfort? · Surely, unless compelled by positive legislative enactment, we should not place a construction upon the law which would render such an action possible, or be fraught with consequences so disastrous to the best interests of society.

But, it is claimed the guardian of the insane person agreed to pay plaintiff for caring for him, and that she is entitled to

2. —— : —— : recover under the contract. The answer to this

contract.        position is, that such agreement is altogether without consideration. The service was such an one as she owed to her husband in virtue of the relation existing between them. She had no right to refuse to perform it, nor to demand compensation for performing it. It so pertained to the wants of the family, that if the service had been performed by another, she would have been liable to pay therefor out of her earnings and property?

Suppose that a husband should refuse to nurse his wife through an attack of bilious fever, until she entered into a contract with him to pay him, out of her separate estate, for his services. Would any court enforce such an agreement.

And will such a contract be looked upon with any more favor when the wife has secured it? It is conceded that very great and very radical changes have been made in the rights and duties of the marital contract. Many innovations have been made, which, in the opinion of the writer hereof, will be demonstrated to be change without reform. But it is believed we have not yet gone to the length of authorizing a wife to maintain an action against her husband, for caring for and protecting him, when his disabilities, whether of body or mind, render him unable to protect and care for himself.

AFFIRMED.

COLE, J., *dissenting*.   I dissent because I think the majority opinion misapprehends the law in two particulars: *First*, It appears to me that the law of 1870, substituting sections 2505 and 2506, as above quoted, instead of being the measure of

the wife's rights to her personal earnings, was the final sever-ance of the only claim, then having color of existence, by the husband upon the earnings of the wife—and that was a claim by the husband's creditors to the fruits of her earnings. This claim, which had been recognized and enforced in *Duncan v. Rozelle,* 15 Iowa, 501, was the only one then remaining, and it was cut off by the above statute—all others had been oblit-erated before; see, *Jones v. Jones,* 19 Iowa, 236, and other cases. *Second,* The plaintiff, in her petition, avers the appointment of a guardian for the insane husband, and that said guardian contracted in writing with plaintiff to pay her seventy-five dollars per month to care for, protect and main-tain his insane ward. The question is not as to the moral or social obligations of the wife to care for and support her insane husband. If it were simply this, I could cordially agree with the majority opinion. But the guardian was authorized to, and was under the necessity of employing some person as custodian of and to care for his insane ward, and he made the contract (which, it is not controverted, was fair and reasonable,) with the wife, the plaintiff. Under such circum-stances, I think the contract is valid, and should be enforced.