Bishop *et al. v.* Redmond.

—————◆—————

No. 9591.

## BISHOP ET AL. *v.* REDMOND.

| 83 | 157 |
| 124 | 103 |
| 83 | 157 |
| 132 | 61 |
| 133 | 695 |
| 83 | 157 |
| 136 | 159 |
| 83 | 157 |
| 138 | 7 |
| 83 | 157 |
| 140 | 567 |
| 83 | 157 |
| 144 | 601 |
| 144 | 663 |
| 145 | 298 |
| 145 | 619 |
| 83 | 157 |
| 153 | 600 |

FRAUDULENT CONVEYANCE.—*Creditor, Who Is.*—One who has a legal right to damages, capable of enforcement by judicial process, is a creditor; and a claim for the maintenance of an illegitimate child or for seduction will support an action to set aside a fraudulent conveyance made for the purpose of defeating such claim.

SAME.—*Subsequent Creditors.— Wife.—Divorce.—Alimony.*—Where a grantor, intending to defraud those who may thereafter become his creditors, makes a conveyance to one who has knowledge of the corrupt purpose, it may be set aside by such subsequent creditors; and a wife, suing for divorce and alimony, may be such a creditor.

SAME.— *Conspiracy.—Evidence.—Declarations.*—Where a fraudulent conveyance is made in part execution of a conspiracy to defraud a third person, the declarations of the grantor made after the execution of the conveyance, but before the accomplishment of the purpose of the conspiracy, are admissible in evidence against the other conspirators.

SAME.—*Consideration.*—Where a grantee takes a conveyance for the purpose of aiding the grantor in defrauding his creditors, the fact that he pays a valuable consideration does not divest the conveyance of its fraudulent character.

SEDUCTION.—*Marriage.—Conspiracy.—Fraud.*—Where a conspiracy is formed for the purpose of defeating the claim of a woman for her seduction, in which a fraudulent purpose to marry and then abandon her enters into and forms a part thereof, the claim for damages for the seduction is not defeated by a marriage entered into for the purpose of carrying such scheme into execution.

Bishop *et al. v.* Redmond.

EVIDENCE.—*Conspirators.*—*Declarations.*—The declarations of one conspirator concerning the common purpose, made before the conspiracy is accomplished, are admissible in evidence against his confederates.

PRACTICE.—*Instructions.*—Where instructions are correct as far as they go, and are relevant to the case made by the evidence, there is no such error as will warrant a reversal. A party who desires more specific instructions than those given must ask them.

SAME.—*Proof.*—It is sufficient if the substance of the issue is proved.

SAME.—*Interrogatories to Jury.*—*Verdict.*—All the answers of the jury are to be taken together, and if, when so taken, there is no irreconcilable conflict between them and the general verdict, the judgment must be given upon it.

From the Tipton Circuit Court.

*R. B. Beauchamp* and *G. H. Gifford,* for appellants.

*D. Waugh* and *I. N. Waugh,* for appellee.

ELLIOTT, J.—Appellee charges in her complaint that Elijah Redmond, one of the appellants, married and abandoned her; that prior to the marriage he had seduced her, and that she was the mother of a bastard child, begotten by him; that after he had seduced her, he conceived the fraudulent scheme of cheating her by marrying and abandoning her, and by conveying before marriage all of his property; that Jacob Bishop, his co-appellant, conspired with him in this fraudulent design, and, for the purpose of aiding in carrying it into effect, received a conveyance of land from him; that the conveyance was without consideration, and was made to and received by Bishop for the sole purpose of giving effect to the fraudulent scheme to defraud the appellee. Prayer that a divorce be granted, alimony awarded, and the fraudulent conveyance set aside.

The complaint abounds in epithets, and contains many allegations which we have omitted, but we have given a sufficient synopsis to exhibit the character and force of the objections urged against it by the appellants.

It is urged that the complaint is bad because it does not show that the appellee was an existing creditor. Laying aside for the present other considerations, and examining the point stated, we shall find that it is without force. The word "cred-

Bishop *et al. v.* Redmond.

itor," as used by the law writers, judges and legislators, has a broader meaning than that ascribed to it by the appellants. The word means more than the holder of a debt; it means one having a legal right to damages, capable of enforcement by judicial process.    Thus, one against whom slanderous words are uttered is, in legal contemplation, a creditor from the time of their utterance. *Wright* v. *Brandis*, 1 Ind. 336; *Rogers* v. *Evans*, 3 Ind. 574; *Shean* v. *Shay*, 42 Ind. 375 (3 Am. R. 366). So, a breach of a promise to marry, constitutes the person to whom the promise is made a creditor from the time of the breach. *Smith* v. *Culbertson*, 9 Rich. 106.    So, too, a right to maintain a prosecution for the support of a bastard child invests the person in whose favor the right exists, with the character of a creditor. *Danson* v. *Bryant*, 19 Mass. 411. The principle established by these and other analogous cases extends to and embraces the case made by the complaint.    It is alleged that the right of the appellee existed when the fraudulent conspiracy was formed, and when the corrupt design was partly executed by the conveyance of the land.    It is not averred that the design was formed or executed before appellee was invested with a right, but that it was both formed and executed at a subsequent time.    It is, indeed, declared that the marriage and desertion were parts of the corrupt scheme formed after one of the conspirators had perpetrated a legal wrong, entitling the appellee to redress.    The purpose to marry and abandon was, as is charged, part of the fraudulent scheme devised to prevent the appellee from subjecting Redmond's property to the payment of her claim.

Another course of reasoning, although starting from a somewhat different point, leads to a conclusion that the complaint is good.    One who conveys property prior to incurring a debt or liability, for the purpose of placing it beyond the reach of the law, and does it for the fraudulent purpose of preventing an enforcement of his liability, is guilty of fraud.    Where the grantor intends to defraud subsequent creditors, and makes the conveyance for the purpose of carrying that intention into

effect, and the grantee acts in concert with him, the conveyance may be set aside by such creditors. *Candee* v. *Lord*, 2 N. Y. 269; *Williams* v. *Banks*, 11 Md. 198; *Cook* v. *Johnson*, 12 N. J. Eq. 5; *Lyman* v. *Cessford*, 15 Iowa, 229. The rule, according to some of the cases, goes further; for, as decided in *Dart* v. *Stewart*, 17 Ind. 221, a conveyance made with actual intent to defraud existing creditors may be avoided by subsequent creditors. *Pennington* v. *Clifton*, 11 Ind. 162; *Ruffing* v. *Tilton*, 12 Ind. 259. If, then, we should adopt the appellants' theory, and construe the complaint as showing that when the conveyance was made the appellee was not a creditor but subsequently became one, we should be bound to sustain the pleading. That she was a subsequent creditor, would be true, even if there were no other elements in the case than her claim to alimony. A wife who holds a claim for alimony is a creditor. *Frakes* v. *Brown*, 2 Blackf. 295; *Feigley* v. *Feigley*, 7 Md. 537; *Boils* v. *Boils*, 1 Cold. 284.

The eleventh instruction given by the court was correct. It informed the jury that if the evidence satisfied them that the conveyance was made to and accepted by Bishop for the purpose of defrauding the appellee out of any judgment that might be obtained against his grantor, they might find the conveyance to be fraudulent. As we have seen, in examining the complaint, the appellee was a creditor from the time the right to legal redress accrued in her favor, and if the conveyance was made for the fraudulent purpose of preventing the collection of a judgment rendered in vindication of that right, she was entitled to have it set aside.

It is argued that the evidence shows a marriage, and that this had the effect of cancelling the prior right, and that, therefore, the rule declared in the instruction is not applicable. There was, however, evidence fully justifying the inference that the marriage was, as the complaint charges, one of the steps in the fraudulent scheme to defeat the claim of the appellee, and was contracted solely for the purpose of carrying it into effect. If the marriage was entered into for this cor-

Bishop *et al. v.* Redmond.

rupt purpose, and there was an abandonment of the appellee pursuant to the preconceived design to defraud her, it did not defeat the claim for damages for the original wrong. Where instructions are correct as far as they go and are relevant, a judgment will not be reversed, although, if more specific instructions had been asked, it would have been the duty of the court to give them. The specific objection urged against this instruction is that it does not go far enough, or, to use the language of counsel, " yet, ought not the instruction to have gone farther, and informed the jury that the debt or liability sought to be avoided by the conveyance still existed?" *Colee* v. *State,* 75 Ind. 511 ; *Pittsburgh, etc., R. R. Co.* v. *Noel,* 77 Ind. 110.

The court instructed the jury that " The fact that the child has not been brought into the court-room, can not be taken as evidence for or against the plaintiff, and if it had been brought in you could not take its appearance as evidence for any purpose." There was no error in this ruling.

The appellants asked the court to instruct the jury, that, in case the appellant Redmond had married the appellee before the commencement of the action, she could not set the conveyance aside. The court did right in refusing this instruction. If, as we have shown in discussing the complaint, the conveyance was made for the purpose of defeating a claim for alimony, or if the marriage was contracted for the purpose of carrying out the alleged fraudulent scheme of defeating appellee's claim for her seduction, the conveyance was fraudulent.

The eleventh instruction asked by the appellant is to the effect that the declarations of Redmond, made after the execution of the conveyance, could not be considered as evidence against his grantor, Bishop. It is true that declarations of one conspirator are not evidence against his confederates, when made after the consummation of the purpose of the combination ; and, if the conveyance is to be regarded as the con-

summation of the purpose of appellants, then the instruction should have been given. But we think neither court nor counsel had any right to assume that the execution of the conveyance consummated the fraudulent purpose. There was evidence from which it might well be inferred that the fraudulent scheme extended to the marriage and desertion of the appellee, and that the conveyance was but one step in the execution of the fraudulent design. Where there is a corrupt scheme to injure another, it is not consummated until the contemplated wrong has been accomplished. As there was evidence tending to show the continuous existence of the fraudulent combination up to the appellee's marriage and desertion, the court would not have been justified in assuming, as the instruction asked it to do, that the execution of the conveyance terminated the purpose and existence of the conspiracy. As long as the purpose of the conspiracy remained unexecuted, the declarations of one conspirator, respecting the common purpose, was competent evidence against all of the members of the combination.

The fourteenth instruction asked by the appellants affirmed that there could be no recovery by the appellee unless she proved that Bishop paid no consideration, although the evidence established the fact that he participated in Redmond's fraudulent design. Where there is actual fraud, in which the grantee is a participant, the fact that he paid a consideration will not protect the conveyance. If, then, the appellee had proved that Bishop participated in his grantor's fraud, she was entitled to recover, whether he paid a consideration or not for the conveyance.

We do not understand the appellants as seriously contesting this doctrine, but as contending that, as the complaint avers that Bishop paid no consideration, she was bound to prove that averment as a substantial part of the issue tendered by her. If the complaint had simply charged that Bishop was the grantee of a voluntary conveyance, then there would be force in appellant's argument. The complaint does not,.

however, rest upon the ground that Bishop paid no consideration, although this is averred, but upon the ground that he was guilty of actual fraud. The substance of the issue tendered was the fraud and his participation, and all that was incumbent upon appellee was to prove this, and this could well be done without proof that the conveyance was a voluntary one. It is sufficient if the substance of the issue is proved.

It is well settled, that in determining whether a judgment shall be given upon the answers of the jury to interrogatories, or upon the general verdict, all of the answers shall be considered. Taking all of the answers together, we do not perceive any invincible repugnancy between them and the general verdict. It is only in cases where the answers are irreconcilable with the general verdict, that they will prevail.

Judgment affirmed.