Henneger *v.* Lomas.

## HENNEGER *v.* LOMAS.

[No. 17,612.　Filed June 11, 1896.]

HUSBAND AND WIFE.—*Marriage.—Common Law Rule.*—At common law a valid marriage made the husband and wife one person in law. The legal existence of the woman was suspended or merged in that of her husband.

SAME.—*Ante-Nuptial Injuries by Husband.—Action.—Common Law Rule.*—The common law rule that marriage extinguished all rights of action in favor of the wife against the husband for ante-nuptial injuries to her person or character has not been abrogated in this State.

SEDUCTION.—*Marriage.—Divorce.—Statute Construed.*—Under section 264. Burns' R. S. 1894, which gives an unmarried woman a right of action for damages for her own seduction, a woman under the age of 21 years who has been seduced, and legally marries her seducer, and afterwards procured a divorce, cannot then maintain an action for damages against him.

MARRIAGE. —*Fraudulent Marriage Voidable.*—A marriage which is procured by fraud is voidable at the suit of the injured party, and may be declared void by judicial decree ; and for such purpose the courts have jurisdiction independently of any divorce law.

SAME. — *Girl Under Sixteen Incapable of Entering Into Marriage Contract.—Ratification.*—A girl under the age of sixteen years is legally incapacitated from contracting marriage, and may have her marriage annulled on that ground unless she ratified the marriage after she arrived at the age of sixteen.

SEDUCTION,—*Voidable Marriage.—Decree of Nullity.—Statute Construed.*—Under section 264, Burns' R. S. 1894, a woman who has been seduced and marries her seducer, and the court afterwards on her application, adjudges that her marriage was void, can, after such decree, bring and maintain an action against him for said seduction.

From the Allen Superior Court. *Reversed.*

*S. M. Hench*, for appellant.

*Randall & Doughman*, for appellee.

MONKS, C. J.—Appellant brought this action against appellee to recover damages for her own

seduction, under the provisions of section 263, R. S. 1881 (section 264, R. S. 1894). Appellee's separate demurrer to each paragraph of the amended complaint for want of facts was sustained. Appellant refused to plead further, and judgment was rendered against her. This action of the court is assigned as error.

It is urged by appellee that the specifications in the assignment of errors are not directed to the ruling on each paragraph, but to the complaint as an entirety. While the specifications in the assignment are not as certain as they could have been made, yet we think they call in question the ruling of the court upon each paragraph of the complaint.

The question presented by the demurrer to the first and second paragraphs of the complaint, is whether a woman under the age of twenty-one years, who has been seduced, and marries her seducer, and afterwards procures a divorce, has, after said divorce is granted, a cause of action against him for damages for said seduction under the provisions of section 263 (264), *supra*.

Section 263 (264), *supra*, provides that: "Any unmarried female may prosecute, as plaintiff, an action for her own seduction, and may recover therin such damages as may be assessed in her favor."

It was held by this court, in *Dowling* v. *Crapo*, 65 Ind. 209, that an action for the seduction of an unmarried female was not barred by her subsequent marriage to a person other than her seducer. That the term "unmarried," used in the statute, relates to the time of the seduction, and not to the time of the commencement or trial of the action.

At common law a valid marriage made the husband and wife one person in law. The legal existence of the woman was suspended or merged in that of the husband. 1 Blackstone Comm. 442, 443; Coke Litt. 112

b.; 2 Kent Comm., p. 129; Schouler Husband and Wife, section 6.

The husband, by virtue of the marriage, was entitled to all the personal property and choses in action of his wife, which, when reduced to possession, becomes his absolute property, and was also entitled to the exclusive possession, use, and control of her real estate during their joint lives. The marriage extinguished all debts and causes of action for ante-nuptial wrongs between the parties. *Long* v. *Kinney*, 49 Ind. 235; *Flenner* v. *Flenner*, 29 Ind. 564; *Burleigh* v. *Coffin*, 22 N. H. 118, 53 Am. Dec. 236; 9 Am. and Eng. Ency. of Law, 795 and note 5.

They could not sue one another, nor did any cause of action arise in favor of either by reason of any injury to the person or character committed by the other. *Kujek* v. *Goldman*, 29 N. Y. Sup. 294; *Abbott* v. *Abbott*, 67 Me. 304, 24 Am. Rep. 27; *Note to Commonwealth* v. *Barry*, 2 Green Crim. Law Rep. 285; *State* v. *Oliver*, 70 N. C. 60 ; *Peters* v. *Peters*, 42 Ia. 182 ; *Libby* v. *Berry*, 74 Me. 286 ; Dicey Parties, star. p. 173.

The husband was liable for his wife's ante-nuptial torts and contracts, and also for her torts committed during coverture, including those committed out of his presence and without his directions. *Ferguson* v. *Collins*, 8 Ark. 241; *Brown* v. *Kemper*, 27 Md. 666; *Hubbell* v. *Fogartie*, 3 Rich. (S. C.), 413; *Allen* v. *McCullough*, 2 Heisk (Tenn.), 174; *Heard* v. *Stamford*, 3 P. Wms. 409; *Hawk* v. *Harmon*, 5 Binn. (Pa.) 43; *Bell* v. *Bennett*, 21 Ind. 427, 83 Am. Dec. 366; *Baker* v. *Young*, 44 Ill. 42 ; 9 Am. and Eng. Ency. of Law, 823–825 ; Dicey Parties, C 30 rule 107, p. 477.

For choses in action accruing to the wife during

coverture, the husband could sue alone, but for her ante-nuptial choses he was required to join his wife as a co-plaintiff in the suit. *Tucker* v. *Gordon*, 5 N. H. 564; *Boozer* v. *Addison*, 2 Rich. Eq. 273, 46 Am. Dec. 43 and note 47–51; *Thompson* v. *Ellsworth*, 1 Barb. Ch. 624; *Rumsey* v. *George*, 1 Maul. and Sel. 176. *Checchi* v. *Powell*, 6 Barn. and C. 253; *Milner* v. *Milnes*, 3 T. R. 627.

For injuries to the person or character of the wife, whether committed before or after the marriage, she could bring no action for redress without her husband's concurrence. Such action could only be brought in the name of both for her injuries, and the damages recovered were the property of the husband, and not of the wife. *Throgmorton* v. *Davis*, 3 Blackf. 383; *Long* v. *Morrison*, 14 Ind. 595, 77 Am. Dec. 72 and note ; *Rogers* v. *Smith*, 17 Ind. 323, 79 Am. Dec. 483 and note 484, 485; *Barnett* v. *Leonard*, 66 Ind. 422; *Thomas* v. *Winchester*, 6 N. Y. 397, 57 Am. Dec. 455; *Smalley* v. *Anderson*, 2 T. B. Monroe (Ky.) 56, 15 Am. Dec. 121; *Ballard et al.* v. *Russell*, 33 Me. 196, 54 Am. Dec. 620; *Shaddock* v. *Clifton*, 22 Wis. 114, 94 Am. Dec. 588, and note 591–594; *Gibson* v. *Gibson*, 43 Wis. 23, 28 Am. Rep. 527 ; *Kaime* v. *Trustees*, 49 Wis. 371; *Reeder* v. *Purdy*, 41 Ill. 279; *Anderson* v. *Anderson*, 11 Bush 327; Dicey Parties, C. 16 rule 67, p. 297; *Southworth* v. *Packard*, 7 Mass. 95.

Any settlement made or discharge given by the husband in such case bound the wife. *Southworth* v. *Packard, supra; Beach* v. *Beach*, 2 Hill 260, 38 Am. Dec. 584; *Ballard* v. *Russell, supra; Shaddock* v. *Clifton, supra.*

For the loss of the service and society of his wife, caused by such injuries, the right of action was in the husband alone, and the action to recover therefor

could only be brought in his name. *Long* v. *Morrison, supra; Brockbank* v. *Whitehaven*, 7 Hurl. & Nor. 834; *Rogers* v. *Smith, supra; Pollard* v. *Railroad Company*, 101 U. S. 223, and note. *Shaddock* v. *Clifton*, 94 Am. Dec. on p. 591.

For the reason that the marriage extinguished antenuptial rights of action for tort or upon contract between husband and wife, the wife could not, after divorce from her husband or his death, maintain an action against him or his estate for any injury to her person or character, committed by him before their marriage or during coverture. *Peters* v. *Peters, supra; Abbott* v. *Abbott, supra; Libbey* v. *Berry, supra; Main* v. *Main*, 46 Ill. App. 106; 9 Am. and Eng. Ency. of Law, 795, and notes 9, 10; Schouler Husband and wife, section 81.

These rules of the common law are founded upon the principle that the husband and wife are one in law, and not upon the theory that the wife is under legal disability. *Barnett* v. *Harshbarger, Admr.*, 105 Ind. 410; *Phillips* v. *Barnett*, 1 Q. B. Div. 436.

The rules of the common law have been greatly relaxed in this State by legislative enactment.

It is provided by section 5116, R. S. 1881 (section 6961, R. S. 1894), enacted in 1852, that: "No lands of any married woman shall be liable for the debts of her husband; but such lands, and the profits therefrom, shall be her separate property, as fully as if she were unmarried: *Provided*, That such wife shall have no power to incumber or convey such lands, except by deed in which her husband shall join."

Section 2488, R. S. 1881, enacted in 1853, provides that "The personal property of the wife held by her at the time of her marriage, or acquired, during coverture, by descent, devise, or gift, shall remain her own

property to the same extent and under the same rules as her real estate so remains; and on the death of the husband before the wife, such personal property shall go to the wife; and on the death of the wife before the husband, shall be distributed in the same manner as her real estate descends, and is apportioned under the same circumstances." This section was amended in 1891, section 2649, R. S. 1894, but the provision concerning personal property owned by the wife at the time of her marriage remains unchanged.

Section 254, R. S. 1881 (section 255, Burns' R. S. 1894), provides that "A married woman may sue alone.

"*First.* When the action concerns her separate property.

"*Second.* When the action is between herself and her husband; but in no case shall she be required to sue or defend by guardian or next friend, except she be under the age of twenty-one years."

Under this section, it is clear a married woman may, as sole plaintiff, sue her husband, or any other person, concerning her separate property. *Adams* v. *Sater*, 19 Ind. 418; *Gee* v. *Lewis*, 20 Ind. 149; *Mills* v. *Winter*, 94 Ind. 329.

The effect of section 254 (255), *supra*, was to leave the common law rule in force, except as to the cases mentioned in said section, in which the wife was authorized to sue alone. *Hamm* v. *Romine*, 98 Ind. 77, 80.

This court has held that said section 254 (255) did not change the common law rule, that in all actions to recover injuries to the person or character of a married woman, the husband and wife must join as plaintiff. *Barnett* v. *Leonard*, *supra*; *Rodgers* v. *Smith*, *supra*; *Long* v. *Morrison*, *supra*.

Section 5131, R. S. 1881 (section 6976, R. S. 1894), which was first enacted in 1879, provides that "A married woman may bring and maintain an action in her

own name against any person or body corporate for damages for any injury to her person or character, the same as if she were sole; and the money recovered shall be her separate property, and her husband, in such case, shall not be liable for costs."

While the statutes in this State have removed the disabilities of married women until ability is now the rule, and disability the exception, yet all her disabilities have not been removed. *Barnett* v. *Harshbarger, supra; Rosa* v. *Prather,* 103 Ind. 191.

As we have shown, the common law rule that marriage extinguished all rights of action in favor of the wife against the husband for ante-nuptial injuries by the husband to her person or character, was founded upon the principle of the unity of husband and wife, and not upon the theory that the wife was under a legal disability. This rule of the common law is in force in this State, unless it has been changed by statute. This court has held that the same has not been abrogated.

In speaking of this rule of the common law, in *Barnett* v. *Harshbarger, supra,* on p. 413, this court said: "Our decisions declare that it has not been abrogated. In the carefully considered case of *Dodge* v. *Kinzy,* 101 Ind. 102, it is affirmed that the general rule of the common law respecting the unity of husband and wife has not been overthrown. The decision in *Mathes* v. *Shank,* 94 Ind. 501, recognizes the rule of the common law, and affirms that it exists except as changed or modified by statute. The doctrine of the Supreme Court of Massachusetts, declared in *Lord* v. *Parker,* 3 Allen, 127, was adopted in *Haas* v. *Shaw,* 91 Ind. 384 (46 Am. Rep. 607), and this court quoted with approval from *Lord* v. *Parker, supra,* the following observations upon the effect of the enabling statute: 'They are in derogation of the common law, and cer-

tainly are not to be extended by construction.' * * *
It is for the Legislature, and not the courts, to destroy
the rule of the common law declaring the unity of hus-
band and wife. * * * The unity which a settled
rule of law has recognized through so many years can
not be disregarded, and it prevents the operation of
the general statutes removing the disabilities of mar-
ried women. * * * The question is not whether dis-
abilities have been removed, but whether the long
prevailing rule of the law declaring husband and wife
to be one person, in legal contemplation, has been an-
nulled." The same doctrine is declared in *Grant* v.
*Green*, 41 Ia. 88; *Newhirter* v. *Hatten*, 42 Ia. 288, 20
Am. Rep. 618; *Peters* v. *Peters, supra.*

Until this rule is annulled all rights of action for
ante-nuptial wrongs of the husband to the wife are
extinguished by their marriage.

Statutes relating to the estate or property of the
huband and wife do not effect their personal relation,
they only change the status and rights of the husband
so far as may be necessary to secure to the wife the
enjoyment of the rights conferred by such statutes.

Section 254 (255), *supra*, authorizes a wife to sue
alone where the cause of action relates to her separate
property, and under said section she may sue her hus-
band or any other person or persons concerning such
property. *Wilkins* v. *Miller*, 9 Ind. 100; *Scott* v. *Scott*,
13 Ind. 225; *Flenner* v. *Flenner, supra.*

Said section changes the procedure, but confers no
new right on the wife, and does not, therefore, entitle
her to sue her husband for a personal injury to herself,
committed by him either before or after their mar-
riage, for the reason that whether a husband is liable
to his wife therefor is not a mere question of pro-
cedure but of substantial right. *Peters* v. *Peters, su-
pra; Libbey* v. *Berry, supra; Abbott* v. *Abbott, su-*

*pra; Phillips* v. *Barnett, supra; McWhirter* v. *Hatton, supra; Grant* v. *Green, supra.*

It is clear that section 5131 (6976), *supra,* authorizing the wife to bring and maintain an action in her own name for any injury to her person or character, the same as if she were sole, merely changes the procedure, but gives no new right, and only applies to such causes of actions as could only be maintained by the husband and wife as co-plaintiffs before said section took effect. The wife could not, therefore, maintain an action in her own name, under this section, against her husband for any injury to her person or character; besides, the section provides that the husband in such case shall not be liable for costs, and this in express terms indicates that the wife cannot maintain an action in her own name against her husband, under said section.

In 1860 the legislature of New York passed an act (Laws of 1860, Chap. 90, p. 158), by section 7 of which it was provided, "Any married woman may bring and maintain an action in her own name, for damages against any person or body corporate, for any injury to her person or character, the same as if she were sole; and the money received upon the settlement of any such action, or recovered upon a judgment, shall be her sole and separate property." This section was amended by an act passed in 1862 (Laws 1862, Chap. 172), but not in respect to the wife's right to bring an action, as provided in the act of 1860. In was held in *Freethy* v. *Freethy*, 42 Barb. 641, that a wife could not maintain an action against her husband to recover damages for slander uttered by him, and it was declared that the legislature did not intend by the laws of 1860 and 1862, to which reference has been made, to change the common law rule as to the unity of husband and wife.

In *Longendyke* v. *Longendyke*, 44 Barb. 366, it was held, under the same section, that the wife could not maintain an action against her husband for an assault and battery.

In *Shultz* v. *Shultz*, 89 N. Y. 644, the Court of Appeals followed the foregoing cases and held that the wife could not maintain an action against her husband to recover damages for assault and battery. Section 7, of the act of 1860 and 1862, of New York was more comprehensive than section 5131 (6976), *supra*, because it did not exclude the right of the wife to sue the husband by providing that he should not be liable for costs.

It is evident, from what we have said and the authorities cited, that appellant's right of action against appellee for her seduction was extinguished by their marriage, and that she could not maintain an action against him therefor after her divorce. To the same effect are the cases of *Peters* v. *Peters, supra; Libbey* v. *Berry, supra; Abbott* v. *Abbott, supra; McWhirter* v. *Hatton, supra; Grant* v. *Green, supra.*

But counsel for appellant insists "that she obtained the divorce from appellant on the ground that the marriage on the part of the appellee was fraudulent, and that she has a cause of action after said divorce against him for her seduction."

It is true, that it is alleged, in the first and second paragraphs of complaint, that appellee fraudulently married appellant to avoid imprisonment, and that he did not intend to live or cohabit with her as a husband or keep his marriage vows, but to desert her, and that he did, immediately after said marriage, leave, abandon, and desert her, and never lived or cohabited with her after said marriage, and refused to support appellant, although he was able to do so," but it is not alleged that the "divorce" was granted on this ground.

Without such an averment, it must be presumed that the word divorce was used in its ordinary sense, and that such divorce was granted appellant for some statutory cause. *Miller* v. *Miller,* 33 Cal. 353.

If, however, it was alleged in said paragraphs that the divorce was granted to appellant from appellee on account of the alleged fraud on the part of appellee, it would be equivalent to an allegation that the court had granted appellant a decree of nullity and adjudged that said marriage was void. Substance, not names or forms, controls in determining the meaning, character, and effect of a pleading or the judgment or decree of a court. Fraud is not a cause of divorce, but a marriage voidable on the ground of fraud may be adjudged void by a court of competent jurisdiction. While the term divorce is not properly applicable to a decree of nullity, yet such a decree is often called a "divorce." 14 Am. and Eng. Ency. of Law, 532; 1 Bishop M. & D. (ed. 1881), section 166.

In 2 Bishop M. & D. (ed. of 1891), section 473, it is said: "Not unfrequently the judicial declaration of nullity is called a 'divorce.' It is properly so where the marriage it declares void was only voidable. For example, it is common and correct language to speak of impotence as a cause for *divorce.* And Blackstone writes that the 'divorce a *vinculo matrimonii* must be for some of the canonical causes of impediment.' But the expression 'sentence,' or 'decree of nullity' equally well indicates the legal avoiding of a voidable marriage; and it seems more significant and less liable to be misunderstood than the other, and somewhat better in accord with modern usage."

The question presented by the demurrer to the third paragraph of the amended complaint is whether a woman, who has been seduced and marries her seducer, and the court afterwards, on her application,

adjudges that said marriage was void, can, after such decree, bring and maintain an action against him for said seduction under section 263 (264), *supra*.

An action for divorce is brought for the purpose of dissolving a marriage, while a nullity suit is brought for the purpose of having a void marriage declared void, or a voidable marriage judicially made void. In the divorce suit the marriage is recognized as valid and adjudged to be dissolved from the date of the decree, but in the nullity suit the marriage is not recognized, but is adjudged void, that is, that there was no marriage, and the rights of the parties are the same as if the marriage had never taken place. 1 Bishop M. & D. (ed. 1891), sections 259, 271. It follows that the rule established in this State that all property questions between husband and wife are presumed to be adjudicated in the decree of divorce does not apply to a decree of nullity, and can, therefore, have no application to this case.

A marriage which is procured by fraud is voidable at the suit of the injured party, and may be declared void by judicial decree. The courts have jurisdiction of such actions independently of any provision of the divorce law. *Bishop* v. *Redmond*, 83 Ind. 157; *Tefft* v. *Tefft*, 35 Ind. 44, 50, and cases cited; *Mason* v. *Mason*, 101 Ind. 25, 28; *Clark* v. *Field*, 13 Vt. 460, 472; *LeBarron* v. *LeBarron*, 2 Am. Law Reg. (N. S.) 212; *Ferlat* v. *Gojon*, 1 Hopk. Ch. (N. Y.) 478, 14 Am. Dec. 554; *Gillett* v. *Gillett*, 78 Mich. 184; *Smith* v. *Smith*, 51 Mich. 607; *Tomppert* v. *Tomppert*, 13 Bush. (Ky.) 326, 26 Am. Rep. 197; *Lyndon* v. *Lyndon*, 69 Ill. 43; *True* v. *Ranney*, 21 N. H. 52, 53 Am. Dec. 164; *Robertson* v. *Cole*, 12 Tex. 356; *McKinney* v. *Clarke*, 2 Swan (Tenn.) 321, 324, 58 Am. Dec. 59; *Willard* v. *Willard*, 6 Baxt. (Tenn.) 297, 32 Am. Rep. 529; *Carris*

v. *Carris*, 24 N. J. Eq. 516; 2 Bishop M. & D. (ed. 1891), section 803; 1 Bishop M. & D. (ed. 1891), sections 471, 472, 473, 476, notes 1 and 2, sections 477, 543, 544; Reeve Dom. Rel. 206; 2 Kent Comm. 77; Schouler's Dom. Rel. 35; *Ridgely* v. *Ridgely* (Md.), 25 L. R. A. 800.

In England the power to annul marriages was exercised by the ecclesiastical courts, and the principles and practice concerning such jurisdiction constituted a part of the common law of that country, and was therefore adopted as the law of this State by statute, section 236, R. S. 1881 (section 236, R. S. 1894). *Tefft* v. *Tefft, supra.*

Courts having the jurisdiction of courts of equity, under the general power, to annul fraudulent contracts, have also jurisdiction to annul a marriage on account of fraud. *Clark* v. *Field et al., supra; Keyes* v. *Keyes*, 22 N. H. 553; *Burtis* v. *Burtis*, Hopkins, 557; *Wightman* v. *Wightman*, 4 Johns. Ch. 343; *Carris* v. *Carris, supra.*

In *Bishop et al.* v. *Redmond, supra*, appellee charged in her complaint that Redmond, one of appellants, married her in the evening and abandoned her the next morning; that prior to the marriage he seduced her, and that she was the mother of a bastard child begotten by him; that, after he had seduced her, he conceived the fraudulent scheme of cheating her by marrying and abandoning her and by conveying before marriage all of his property; that Jacob Bishop, his co-appellant conspired with him in this fraudulent design, and, for the purpose of aiding in carrying it into effect, received a conveyance of land from him; that the conveyance was without consideration and was made to and received by Bishop for the sole purpose of giving effect to the fraudulent scheme to defraud appellee. Prayer that a divorce be granted, alimony awarded, and the fraudulent conveyance set aside.

This complaint did not state any statutory cause for a divorce, but did state facts sufficient to entitle appellee to a decree of nullity, on the ground of fraud. It was only upon this theory that the action of the trial court could be sustained. The difference between that action and the one at bar is, that in that action, the injured party sought and obtained the decree of nullity and damages, incorrectly called alimony in the complaint and the decree of the trial court, in the same action, while in this the decree of nullity was first procured and the action for damages brought afterwards. It was shown by the evidence in that case that Elijah Redmond had carnal knowledge of appellee in June, 1879, that while appellee was pregnant with child by said Redmond he conveyed the real estate described in the complaint to his co-appellant, Bishop, in November, 1879, that the bastard child was born in March, 1880, and appellee was married to Redmond, the father of said child, in November, 1880, and that the allegations of the complaint heretofore set out were true.

The court below rendered a decree of nullity in favor of appellee, calling it, as is often done, a divorce and a judgment for damages against her seducer, and a decree setting aside the conveyance of the real estate to Bishop, and that the same be sold, which was affirmed by this court on appeal.

The court in that case held that where a conspiracy is formed for the purpose of defeating the claim of a woman for her seduction, in which a fraudulent purpose to marry and then abandon her enters into and forms a part thereof, the claim for damages for the seduction is not defeated by the marriage entered into for the purpose of carrying such scheme into execution. The court said: "The eleventh instruction given by the court was correct. It informed the jury

that if the evidence satisfied them that the conveyance was made to and accepted by Bishop for the purpose of defrauding the appellee out of any judgment that might be obtained against his grantor, they might find the conveyance to be fraudulent. As we have seen, in examining the complaint, the appellee was a creditor from the time (June, 1879) the right to legal redress accrued in her favor, and if the conveyance was made for the fraudulent purpose of preventing the collection of a judgment rendered in vindication of that right, she was entitled to have it set aside. It is argued that the evidence shows a marriage, and that this had the effect of canceling the prior right, and that, therefore, the rule declared in the instruction is not applicable. There was, however, evidence fully justifying the inference that the marriage was, as the complaint charges, one of the steps in the fraudulent scheme to defeat the claim of appellee, and was contracted solely for the purpose of carrying it into effect. If the marriage was entered into for this corrupt purpose, and there was an abandonment of the appellee pursuant to the preconceived design to defraud her, it did not defeat the claim for damages for the original wrong." What was the original wrong? The seduction of appellee by Redmond, one of the appellants. Of course, the right of appellee to recover damages against Redmond and set aside the conveyance to Bishop, depended upon whether a decree of nullity (called a divorce in the complaint and decree) was granted to him.

If appellee, in the case at bar, as alleged, did not intend to live and cohabit with appellant, or have any sort of marital intercourse with her when the marriage ceremony was performed, but merely went through the formalities to avoid imprisonment for bastardy and prosecution for seduction, and immedi-

ately left and did not perform his marriage vows, the marriage was voidable at the election of appellant upon the discovery of such fraud, and she was entitled to bring an action against appellee and have the same declared void by judicial decree. *Bishop et al.* v. *Redmond, supra,* and authorities cited above; 1 Bishop M. & D. (ed. 1891), sections 473, 476, note 2, section 477, 327-339.

After such decree had been rendered she had the right to sue appellee for her seduction, the same as if she had never been married to him.

It also appears from the allegations in the third paragraph of the amended complaint, that appellant was, when married to appellee, under the age of sixteen years, and was therefore incapable on that account of contracting such marriage with appellee. Section 5324, R. S. 1881 (section 7289, R. S. 1894). It is provided by section 1025, R. S. 1881 (section 1037, R. S. 1894), that when either of the parties to a marriage shall be incapable, from want of age, of contracting such marriage, the same may be declared void on application of the incapable party by any court having jurisdiction to decree divorces.

It is clear that appellant was also entitled to have her marriage to appellee annulled on this ground, unless she ratified said marriage after she arrived at the age of sixteen years. 14 Am. and Eng. Ency. of Law, 487, 489; *Shafher* v. *State*, 20 Ohio 1; *McDowell* v. *Sapp*, 39 Ohio St. 558; *Holtz* v. *Dick*, 42 Ohio St. 23, 51 Am. Rep. 791; Stewart Marriage and Div., sections 57, 58.

It is the policy of the law in this State, however, that children born or begotten during the existence of a voidable marriage are considered legitimate, even though such marriage is adjudged to be void by a

court of competent jurisdiction. Section 1025 (1037), *supra.*

It is not material, however, upon what ground the decree of nullity was granted to appellant, for the court had jurisdiction, and the decree, even if erroneous, is binding on appellant and appellee, and cannot be questioned in this case. Nothing in the opinion is in conflict with the doctrine declared in *State* v. *Otis,* 135 Ind. 267, cited by appellee. In that case this court held that in case of the seduction of a female under the age of twenty-one years, under promise of marriage, in violation of the provisions of section 1992, R. S. 1881 (section 2078, R. S. 1894), the subsequent marriage of the parties was a bar to the further prosecution for such crime. The wife in that case had not attempted to have the marriage set aside for fraud, and the marriage was therefore binding upon the parties, and all other persons, including the State, until its nullity was declared by a competent tribunal. *Tomppert* v. *Tomppert, supra.*

If the wife, in that case, had obtained a decree of nullity against Otis, it would have been a judgment of the court that no marriage had ever existed between them, and the fact that there had been a marriage voidable at the election of the wife would not have been available as a defense by Otis after such decree of nullity.

It follows that the court erred in sustaining the demurrer to the third paragraph of the amended complaint.

Judgment reversed, with instructions to overrule the demurrer to the third paragraph of the amended complaint, with leave to file an amended and additional paragraph of complaint if desired, and for further proceedings in accordance with this opinion.