25 N.J. Super. 96 (1953)
95 A.2d 494
NORMA ROBERTS CLEMENT, FORMERLY KNOWN AS NORMA ROBERTS, PLAINTIFF,
v.
ATLANTIC CASUALTY INSURANCE COMPANY, DEFENDANT.
Superior Court of New Jersey, Essex County Court Law Division.
Decided March 12, 1953.
*98 Mr. Samuel A. Gennet, attorney for plaintiff.
Messrs. Harkavy and Lieb (Mr. Abraham I. Harkavy appearing), attorneys for defendant.
HUGHES, J.S.C.
Plaintiff, having obtained a judgment in the New York Supreme Court against Joseph Clement, assured of the defendant insurance company, for damages for personal injuries sustained in an accident within the policy coverage, sues the defendant here under a provision of the policy purportedly accommodating such direct suit.[1] The *99 amount of that judgment was well within the policy limits. Defendant moved to attack the complaint under Rule 3:12-2(5), and by stipulation answer has been filed and its validity questioned by an appropriate motion, with the result that the whole issue as to the effect of the pleaded case is submitted summarily to the court as on cross-motions under Rule 3:56.
Thus settled, the pleaded case establishes that plaintiff is now the wife of Joseph Clement, the defendant's assured; that on March 19, 1949, while she was a resident of New York State and before she was his wife, she was riding in New York as a passenger in his automobile and was injured in an accident; that she duly sued and served Clement, who was then and is now a resident of New Jersey, in an action in the Supreme Court of New York, County of New York; that during the pendency of such action and before it came to trial, she married Clement; that defendant had insured Clement for public liability, including claims generally equivalent to the one reflected in the New York Supreme Court action; that defendant, by its attorney, defended Clement in the New York action, but foreseeing the availability of defenses arising from the newly created marital status, it offered and Clement accepted such defense under a sufficient "reservation of rights."[2] The pleadings further *100 evidence that judgment was duly entered after trial in favor of plaintiff and against Clement in the New York action on May 6, 1952; that no appeal was taken from such judgment and none is now possible; that such New York court had jurisdiction of the subject matter and of the person of Clement, the defendant therein, and no fraud was involved in its acquiring same; that in New York, a litigation between husband and wife in a law action such as involved in that judgment was proper, no rule of law there preventing such adversary litigant conflict between husband and wife; that the judgment, which, as stated, is within the policy limits, remains unpaid; that plaintiff now resides with her husband, Clement, in New Jersey; that no execution was issued in New York on the judgment obtained there; that no separate action on the judgment was undertaken against Clement in New Jersey, and that Clement is neither bankrupt nor insolvent.
A principal ground of defendant's motion to dismiss the action is the New Jersey rule of public policy preventing an action at law by wife against husband, it being suggested that the instant suit violates that principle by indirection and thus strikes at the public policy which for very many years has frowned in this State upon such litigation. On this ground, I determine that the established New Jersey rule does not prevent the instant suit. That rule, although based upon public policy, is utilitarian in nature. It exists in protection of the solidarity of the marital relationship. It thus extinguishes an antenuptial cause of action for damages for tortious injury to the person. Wolfer v. Oehlers, 8 N.J. Super. 434 (Law Div. 1950). Its utility in the securing of domestic peace outweighs, in modern concept, its equivalent basis in former times in the fiction of joinder of legal identity incident to the marriage bond. 1 Blackstone's Commentaries 442;[3]Lombard v. Morse, 155 Mass. 136, 29 *101 N.E. 205, 14 L.R.A. 273 (Sup. Jud. Ct. 1891). Although it has been held recently that such fictional unity has not dissipated, through statutory or other changes, to the extent of validating contracts of spouses inter se at law, it is to be noted that such deference to the common law rule finds its real basis in the utilitarian necessity of the rule itself. Bendler v. Bendler, 3 N.J. 161 (1949). In other words, the disability is more than an incapacity to sue; it is a mutual disability to contract with each other, the law perceiving the incompatibility of such bargaining with the unique implications of the marriage relationship. In this respect the issue considered here is readily distinguishable from that dealt with in Bendler v. Bendler, supra, where the asserted liability (under the Workmen's Compensation Act) depended upon a contractual relationship of employment, impossible of legal existence under the mutual disability at the common law of husband and wife to contract inter se and to sue each other. And so, while that opinion recognized the ground of the mutual disability in the fictional unity of person and interest in married persons, it did not fail to emphasize the primary concern of society in the integrity of the marriage relation as the key and basis of that mutual disability. Bendler v. Bendler, supra, at p. 172.
Indeed, our former Court of Errors and Appeals has held that "The reason behind the rule that husband or wife may not hold the other civilly liable is that such actions would tend to destroy peace in the family relationship." Hudson v. Gas Consumers' Association, 123 N.J.L. 252 (E. & A. 1939). But in the extinguishing by marriage of an antenuptial cause of action for tort, we have no concern with any primary mutual disability to contract inter se, but rather inquire into the scope of the very disability to sue. In cases of immunity from suit springing from this or kindred rules of public policy, the fact of insurance coverage is not of significance, Bendler v. Bendler, supra; Woods v. Overlook Hospital Association, 6 N.J. Super. 47 (App. Div. 1949), and thus such rule of immunity must be understood to extend, in necessary implication, not only to the prevention of actual *102 financial harm to the spouse, potentially disruptive of marital harmony, but as well to a mere public appearance of such risk, all within the theory of the public policy of the State. Nor is the origin of the liability of significance, for even if the claim is reduced to foreign judgment and then sued upon here, the action is abortive as to the defending spouse despite the lack of jurisdictional defect or fraud, the characteristic defenses to foreign judgments. Metzler v. Metzler, 8 N.J. Misc. 821 (Cir. Ct. 1930).
The reasons underlying the public policy rule, in my opinion, do not extend to the suit here involved, for its maintenance presents no possibility of financial harm to the insured spouse, nor the public appearance of marital disharmony, Clement being neither a record party nor a party conceivably in interest. The immunity of the spouse does not extend to one against whom a direct cause of action exists, albeit that cause originated in the tortious conduct of such spouse. Thus, an employer is liable for the acts of his servant who may enjoy such immunity. Hudson v. Gas Consumers' Association, supra. Nor, in my view, does such immunity extend to the insurance carrier of the spouse, if the contract of the insurance by its terms accommodates, as here, a direct suit against the carrier. If the reason for application of the rule of public policy does not exist, the rule manifestly should not apply.
The second ground is that the action is premature in that the statute N.J.S.A. 17:28-2 requires, before suit against the insurance carrier, that execution be issued and returned unsatisfied against the assured. The statute, however, merely provides that no policy shall be issued "* * * unless there is contained within the policy a provision that the insolvency or bankruptcy of the person insured shall not release the insurance carrier * * *, and stating that in case execution against the insured is returned unsatisfied in an action brought by the injured person * * * because of the insolvency or bankruptcy, then an action may be maintained by the injured person * * *" against the carrier. The statute thus establishes the minimal protection intended *103 by legislative policy for the benefit of those who might suffer harm at the hands of the assured person. It does not discourage nor prevent the inclusion of terms in a policy which are more broad or generous. The policy here has more breadth in its scope than required by statute, for by Condition No. 6 it submits to direct suit against it by a claimant who has reduced to judgment his claim against the insured, notwithstanding bankruptcy or insolvency of the insured and does not, by any construction, require as a condition precedent to the imposition of such liability, the issue and return unsatisfied of execution against the insured. In this respect it differs from cases such as Universal Indemnity Insurance Co. v. Caltagirone, 119 N.J. Eq. 491 (E. & A. 1935), and Saxon v. United States Fidelity and Guaranty Co., 107 N.J.L. 266 (E. & A. 1930), in which the policy apparently closely followed the statute, and in which, accordingly, the requirement of the prior issuance and return unsatisfied of execution was held to be a condition precedent to direct suit against the carrier. No such provision appears in the instant policy. This suit differs likewise from the case of Kabinski v. Employers' Liability Assurance Corp., Ltd., 123 N.J.L. 377 (E. & A. 1939), in which the policy was silent as to a direct suit against the carrier and the court, therefore, resorted to the statute to spell out the company's obligation on the theory that the statutory provision was, in effect, a part of the policy.
The right of the injured party under a policy such as that here involved, springs from the third-party benefit contemplated by its provisions and is, therefore, responsive to the contractual will of the parties so long as consistent with the main requirements of the statute. If the policy agreement establishes a right more broad than the statute demands as a minimal requirement, it does not offend the statute and the provisions of the statute do not limit it, although the converse would be true if a policy fell short of the statutory requirements. The instant policy submits to direct suit against the carrier by one who has reduced to judgment the insured's obligation to pay after actual trial, and although *104 this generous provision is not required by statute, it is not in conflict with it, and the engraftment of the statutory conditions into such a policy depends, by the terms of both statute[4] and policy,[5] on such "conflict." It is sophism to suggest that a policy provision entitling all judgment holders to sue without qualification, offends against or violates a statute requiring as a minimal provision that judgment holders be permitted to sue under certain conditions. The inhibition of the statute, as stated, is for the protection of the third-party claimant, i.e., the public.
The pleaded case in the light of the motions settles the fact that full compliance of the assured with the terms of the policy has been had.
I, therefore, determine that judgment must be entered for the plaintiff. An order should be submitted by counsel.
NOTES
[1] Condition No. 6 of Policy  "Action Against Company  Coverages A and B: No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the company as a codefendant in any action against the insured to determine the insured's liability.
Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder."
[2] "In tendering you the services of our Claim Department and attorneys, it must be distinctly understood that we do not waive any of the provisions of the policy above referred to and we do not invalidate our position in any way or the benefits of said policy of insurance. If you are not willing to accept the services of our Claim Department and our attorneys, then please advise us at once, as we do not want to be put in a position of waiving the provisions of said policy. You may then take such action as you think advisable.

If we do not hear from you to the contrary, we will assume that it is your desire that we continue to handle the matter strictly in accordance with our reservation of rights."
[3] "By marriage the husband and wife are one person in law: that is, the very being or legal existence of the woman is suspended during the marriage, or at least is incorporated and consolidated into that of the husband * * *." 1 Bl. Comm. 442.
[4] N.J.S.A. 17:28-2  "* * * A policy issued in violation of this section shall, nevertheless, be held valid but be deemed to include the provisions required by this section, and when any provision in the policy or rider is in conflict with the provisions required to be contained by this section, the rights, duties and obligations of the insurer, the policyholder and the injured person shall be governed by the provisions of this section."
[5] Condition No. 23 of Policy  "Terms of Policy Conformed to Statute: Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes."