BENJAMIN KENNEDY AND HARRIET C. KENNEDY, PLAIN-TIFFS-APPELLANTS, v. WILLIAM V. CAMP, DEFEND-ANT-RESPONDENT.

Argued October 13, 1953—Decided January 11, 1954.

394

Mr. *Abraham I. Harkavy* argued the cause for appellants (*Messrs. Harkavy and Lieb,* attorneys).

Mr. *Samuel P. Orlando* argued the cause for respondent (*Messrs. Orlando, Devine & Tomlin,* attorneys).

The opinion of the court was delivered by

HEHER, J. The question here is whether a tortfeasor may have contribution under the Joint Tortfeasors Contribution Law of 1952, *N. J. S.* 2A:53A–1, from a joint participant in the tortious act or omission, for the injurious consequences of the wrong to the wife of the joint wrongdoer.

The inquiry was answered in the negative by the Superior Court; there was summary judgment for defendant in this action for contribution.

The subject matter of the action is a judgment in tort for negligence recovered by Viola Camp against the plaintiffs herein, Benjamin Kennedy and Harriet C. Kennedy. On October 6, 1951 an automobile owned by Benjamin Kennedy, and driven by his wife, Harriet C., and a like vehicle operated by the defendant William V. Camp collided at the intersection of Greentree Road and Pitman-Downer Road in Washington Township, Gloucester County. Camp's wife, the judgment plaintiff, was an occupant of her husband's automobile, and the judgment is for the personal injury she sustained as a result of the collision. Her husband joined in the action, *per quod* and to recover the damage to his automobile. The plaintiff Benjamin Kennedy interposed a counterclaim for the damage to his vehicle. The jury disallowed the claims of Kennedy and Camp, presumably on the ground that the collision was the result of their joint or concurring negligence. Viola Camp was awarded $5,000, and the consequent judgment was satisfied by the judgment defendants by payment made November 3, 1952. This action for contribution was commenced December 23 ensuing, on the hy-

pothesis that the judgment defendants, the plaintiffs herein, and the defendant William V. Camp are joint tortfeasors within the intendment of the Contribution Law. But this evinces a fundamental misconception of the law.

The statutory right of contribution is founded on a common liability in tort; and there is none such here. Joint or several liability to the injured judgment plaintiff for the tortious conduct, enforceable by action, is a substantive element of the right. *Sattelberger v. Telep,* 14 *N. J.* 353 (1954). The wrongdoers must act together in committing the wrong, or their acts, if independent of each other, must unite in causing a single injury. *Matthews v. Delaware, L. & W. R. R. Co.,* 56 *N. J. L.* 34 (*Sup. Ct.* 1893). The Contribution Law, *N. J. S.* 2A:53A–1, defines the term "joint tortfeasors" as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." The right of contribution, *N. J. S.* 2A:53A–3, comes into being when injury or damage is suffered by any person in consequence of "the wrongful act, neglect or default of joint tortfeasors," as so defined, and the injured person recovers "a money judgment or judgments for such injury or damage against one or more of the joint tortfeasors, either in one action or in seperate actions, and any one of the joint tortfeasors pays such judgment in whole or in part"; the recovery is to be had from "the other joint tortfeasor or joint tortfeasors for the excess so paid over" the payor's "pro rata share."

It is an ancient rule of the common law that a tort committed by one spouse against the person or character of the other is not remediable by action. *Thompson v. Thompson,* 218 *U. S.* 611, 31 *S. Ct.* 111, 54 *L. Ed.* 1180 (1910); *Libby v. Berry,* 74 *Me.* 286 (*Sup. Jud. Ct.* 1883); *David v. David,* 161 *Md.* 532, 157 *A.* 755, 81 *A. L. R.* 1100 (*Ct. App.* 1832); *Kaczorowski v. Kalkosinski,* 321 *Pa.* 438, 184 *A.* 663, 104 *A. L. R.* 1267 (*Sup. Ct.* 1936). The ground of this commonlaw immunity is the legal identity of husband and wife. If a wife receives bodily injury from the hands

of her husband, he is liable to criminal proceedings for a felony or misdemeanor, as the case may be; and in the case of an ordinary assault it is quite clear that the wife has a right for her protection, to obtain articles of the peace against her husband, and upon this and other occasions she is in law a separate person. But a wife cannot sue her husband for beating her during coverture, even after divorce. This is not a "difficulty as to parties, * * * but a requirement of the law founded upon the principle that husband and wife are one person. * * * The reason * * * why the wife cannot sue the husband for beating her must be because they are one and the same person, and the same reason exists in criminal law, where a woman cannot be convicted of larceny though she has in fact carried away her husband's goods. Other instances might easily be given, all showing that the reason is not the technical one of parties, but because, being one person, one cannot sue the other"; there "was no cause of action during coverture," and the "dissolution of the marriage does not give one." *Phillips v. Barnet,* 1 Q. B. D. 436 (1876), Blackburn, J. The principle has its roots in the strongest considerations of public policy—*i. e.* the maintenance of marital unity, peace and felicity. By marriage, the husband and wife at common law become one person: That is, says Blackstone (1 *Blackstone's Com.* 442), "the very being or legal existence of the woman is suspended" during the marriage, or at least is "incorporated and consolidated into that of the husband: under whose wing, protection and *cover,* she performs everything; * * * and her condition during her marriage is called her coverture." *Vide Den ex dem. Hardenbergh v. Hardenbergh,* 10 N. J. L. 42, 43 (*Sup. Ct.* 1828). The common-law rule obtains in New Jersey, unmodified by statute. *Hudson v. Gas Consumers Association,* 123 N. J. L. 252 (*E. & A.* 1939). See, also, *Bendler v. Bendler,* 3 N. J. 161 (1949); *Leith v. Horgan,* 13 N. J. 467 (1953).

The doctrine is generally sustained on the "sociological and political ground that it would introduce into the home, the basic unit of organized society, discord, suspicion and

distrust, and would be inconsistent with the common welfare." *David v. David,* cited *supra.* And, for the same basic reason, liability for ante-nuptial torts is extinguished by marriage. *Henneger v. Lomas,* 145 *Ind.* 287, 44 *N. E.* 462, 32 *L. R. A.* 848 (*Sup. Ct.* 1896); *Gottliffe v. Edelston,* 2 *K. B.* 378 (1930).

 The unity of interest of the spouses has not been altered in this regard by the New Jersey Married Persons Act. The enabling provisions of that statute, *R. S.* 37:2–1 *et seq.,* do not in terms embrace actions between spouses in tort for negligence. And it is expressly provided, *R. S.* 37:2–5, that nothing in the chapter contained "shall enable a husband or wife to contract with or to sue each other, except as heretofore, and except as authorized by this chapter." Such a radical change in the common-law philosophy of marital union, identity, and integrity cannot be made to rest upon statutory provisions of uncertain and doubtful import; it is fairly to be presumed that the lawgiver was familiar with this basic policy of centuries, and a purpose to effect a change so fundamental would be expressed in clear and indubitable terms. *Thompson v. Thompson,* cited *supra.* The Married Persons Act does not suggest this assault upon the unity of the spouses which is interwoven into the law for the domestic peace and well-being that are conducive to the subsistence of the marriage relation, in the service of the common good and welfare as well as the essential interests of the spouses themselves and their offspring.

 The policy is likewise inherent in the Contribution Law. There is no right of contribution unless there be joint wrongdoers under a joint or several liability to the injured person for the injurious consequences of the wrongful act, neglect or default reduced to judgment. This by clear and explicit provision. And if the terms were less certain in meaning, a legislative intention to modify this ancient common-law concept of the oneness of spouses cannot rest upon doubtful implication. An interpretation of the Contribution Law that would sustain contribution in these circumstances would afford the means of rendering the husband indirectly

liable to his wife in tort for negligence, and thus to transgress this salient principle of the common law that interdicts such intrusions upon marital unity and domestic contentment.

And assayed in relation to the nature of contribution and the juridical principles underlying the remedy, this statutory exegesis is given added emphasis and sanction. Grounded in social policy and the essential justice which renders every man his due, contribution was originally an equitable device, eventually accepted by the courts of law, that would charge the conscience of one under a common liability with his just share of the obligation when discharged by another laden with the common burden. In early times this doctrine was deemed equally well founded in equity and morality. The distribution of the burden to defeat unjust enrichment was not a judicial measure available to wrongdoers, but the statute under review ameliorates that long-established rule. *Pennsylvania Greyhound Lines, Inc. v. Rosenthal,* this day decided, 14 *N. J.* 372. The essence of the doctrine is a common obligation to the person injured by the common tortious conduct. Fault alone is not enough; there must be a joint liability to respond to the injured person in damages for the consequences of the default. The tortfeasor who satisfies the judgment is entitled to be put on the same footing with those who are equally liable for the wrong remedied by the judgment. Compare *Stirling v. Forrester,* 3 *Bligh* 575, 590 (1821). All who are equally bound are equally relieved by the payment; and contribution is simply the equalizing of the burden, upon the maxim, *qui sentit commodum sentire debet et onus. Shelly's Case,* 1 *Co.* 99; *Deering v. Earl of Winchelsea,* 1 *Cox,* 318; *s. c. 2 Bos. & Pull.* 270. Apart from its foundation in the "clearest principles of natural justice," the doctrine "has an equal foundation in morals; since no one ought to profit by another man's loss; where he himself has incurred a like responsibility. Any other rule would put it in the power of the creditor to select his own victim; and, upon motives of mere caprice or favoritism, to make a common burden a most

gross personal oppression. It would be against equity for the creditor to exact or receive payment from one, and to permit, or by his conduct to cause, the other debtors to be exempt from payment." *Story's Equity Jurisprudence* (11*th ed.*) *sections* 492, 493. The gravamen of the action for contribution is the discharge of the joint tortfeasor's common liability for the common wrong, enforceable by action at the instance of the injured person.

In *American Automobile Insurance Co. v. Molling, Minn.*, 57 *N. W. 2d* 847 (*Sup. Ct.* 1953), involving a statute of like import, it was held that the "very essence of the action of contribution is 'common liability' "; and the statutory remedy of contribution among joint tortfeasors constitutes "a judicial extension of the common-law doctrine of contribution," and does not change "the basis of the action of contribution." The rationale of contribution is compensation for the release of the joint tortfeasor's positive liability for the wrong effected by payment of the judgment, according to the equitable doctrines respecting unjust enrichment and restitution. *Vide Restatement, Restitution, section* 86. Such is the principle of our statute. It plainly distinguishes between "joint wrongful acts or omissions" and "common liability" for such acts or omissions.

Where the negligence of two persons concurred to the injury of the son of one, contribution was denied for want of the "first essential" of "common liability," since under Wisconsin law there could be no recovery by the son from the father. *Zutter v. O'Connell*, 200 *Wis.* 601, 229 *N. W.* 74 (*Sup. Ct.* 1930). The doctrine was later applied where the concurring negligence of the drivers of two cars caused injury to the guests of one of the drivers who could not recover from him because of their assumption of the risk. *Walker v. Kroger Grocery & Baking Co.*, 214 *Wis.* 519, 252 *N. W.* 721, 92 *A. L. R.* 680 (*Sup. Ct.* 1934).

This is the *ratio decidendi* of *Norfolk Southern R. Co. v. Gretakis*, 162 *Va.* 597, 174 *S. E.* 841 (*Sup. Ct. App.* 1934); *Yellow Cab Co. of D. C., Inc. v. Dreslin*, 86 *U. S.*

*App. D. C. 327, 181 F. 2d 626, 19 A. L. R. 2d 1001 (C. C. A. D. C. 1950).*

Affirmed.

JACOBS, J. (concurring). The common-law rule against contribution amongst joint tortfeasors had its origin in *Merryweather v. Nixan,* 8 *T. R.* 186 (1799); it is no longer law in England. See *Clerk & Lindsell, Torts* (10*th ed.* 1947) 102. Although that case dealt only with intentional wrongdoers acting in concert, courts throughout the United States extended its doctrine to preclude contribution between tortfeasors who acted independently, though concurrently, and whose wrongs were unintentional, though negligent. *Prosser, Torts* (1941) 1113. Our cases applying the common law consistently denied contribution, asserting flatly that whenever the injury was occasioned by two or more tortfeasors they could not claim contribution *inter se.* *Newman v. Fowler,* 37 *N. J. L.* 89 (*Sup. Ct.* 1874); *Public Service Ry. Co. v. Matteucci,* 105 *N. J. L.* 114 (*E. & A.* 1928); *Malinauskas v. Public Service Interstate Transp. Co.,* 6 *N. J.* 269, 274 (1951). *Cf. Douglas v. Sheridan,* 26 *N. J. Super.* 544, 546 (*Law Div.* 1953).

The doctrine, as thus broadly applied, had little to support it. John Doe and Richard Roe may have driven their cars negligently with resulting accident and injury to Jane Doe, a passenger in John's car. Jane may have sued Richard and recovered fully; yet Richard could not have compelled John to bear his share even upon a showing that John's negligence was gross and Richard's only slight. This result did violence to basic equitable notions that those whose fault caused the injury should, in good conscience, bear their just shares of the burden. As Dean Prosser has forcefully put it:

"There is obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were, equally, unintentionally responsible, to be shouldered onto one alone, according to the accident of a successful levy of execution, the plaintiff's whim or malevolence, or his collusion with the other wrongdoer, while the latter goes scot free."

If Jane happened to be the wife of John, additional considerations may have been brought into play. The common law did not recognize a wife as an independent entity and she could not maintain any action against her husband for the tort resulting in her injury. Although Blackstone's concept that the very being or legal existence of the wife was incorporated into that of her husband has withered under the onslaught of married women's legislation and a new social order, a majority of the states, including our own, still refuse to entertain tort actions between spouses. *Prosser, supra,* 901; *R. S.* 37:2–5; *Hudson v. Gas Consumers' Association,* 123 *N. J. L.* 252 (*E. & A.* 1939); *Lang v. Lang,* 24 *N. J. Misc. R.* 26 (*Circ. Ct.* 1946). *Cf. Bendler v. Bendler,* 3 *N. J.* 161 (1949). The ever-increasing minority of the states which disapprove this position view it simply as an historical survival which has no justifiable place in modern times. See *Prosser, supra,* 904; *Courtney v. Courtney,* 184 *Okl.* 395, 87 *P. 2d* 660 (*Sup. Ct.* 1939); *Brandt v. Keller,* 413 *Ill.* 503, 109 *N. E. 2d* 729 (*Sup. Ct.* 1953). *Cf. Jaeger v. Jaeger,* 262 *Wis.* 14, 53 *N. W. 2d* 740 (*Sup. Ct.* 1952). Those who seek a mid-twentieth century basis for the majority rule hastily reject the quaint notion that since the spouses are "one person, one cannot sue the other" but urge that it does serve to preserve domestic tranquillity. In the rare instances where the wife will sue her husband despite his objection there is probably not much tranquillity to preserve; in the other instances the husband, protected by insurance, may welcome her action. In any event, such policy as may possibly prevail against tort actions between spouses clearly has no bearing on situations which do not involve any direct proceedings between them as adverse party litigants. See *Hudson v. Gas Consumers' Association, supra; Clement v. Atlantic Cas. Ins. Co.,* 25 *N. J. Super.* 96 (*Cty. Ct.* 1953), affirmed 13 *N. J.* 439 (1953); *Pennsylvania Greyhound Lines, Inc. v. Rosenthal,* 14 *N. J.* 372 (1954).

In the *Hudson* case a husband negligently injured his wife while he was engaged in the performance of his duties for his employer. The Court of Errors and Appeals held that

there was no policy prohibiting a tort action by the wife against the employer, notwithstanding that the employer would presumably have a cause of action for reimbursement against the husband. *Cf. Jones v. Kinney,* 113 *F. Supp.* 923 (*D. C. Mo.* 1953). In the *Clement* case a wife recovered a New York judgment in a tort action against her husband and thereafter sued her husband's insurance carrier in New Jersey; recovery was allowed upon the view that New Jersey's policy against actions between spouses does not extend to such circumstances. In the *Rosenthal* case the injured party recovered against one tortfeasor and married the other. This court found no restriction against a later action for contribution under *L.* 1952, *c.* 335, by the tortfeasor who had paid, against the other tortfeasor. In each of the foregoing instances the interests of justice dictated recovery and since the New Jersey actions were not between spouses as adverse party litigants, our courts found no policy obstacles.

It seems entirely clear that good sense and policy would support Richard's right to maintain an independent action for contribution against John, even where the injured Jane was the wife of John. To the extent that the majority opinion suggests a contrary view, I respectfully dissent. However, the issue which has been presented by the parties for determination is one of statutory construction rather than policy. The Joint Tortfeasors Contribution Law (*L.* 1952, *c.* 335) provides that the right of contribution shall exist among joint tortfeasors, expressly defined to mean "two or more persons jointly or severally liable in tort for the same injury." I agree that this statutory language is not sufficiently broad to extend to the instant case in which the wife suffered her injuries through the negligence of her husband and another. Under the settled law of our State she could not maintain any action against her husband for her injuries and, in common legal parlance, her husband was not "liable in tort." The Legislature was fully aware of this settled law and the ordinary meaning of its terminology and I have found nothing whatever in the history or terms of the Contribution Law to suggest its use in any dif-

ferent sense. Since the court's proper function is simply to ascertain and effectuate the legislative meaning, the construction in the majority opinion would appear to be the proper one; if it be considered narrow and its consequences socially undesirable (see 26 *Temp. L. Q.* 453 (1953)) the remedy lies in the hands of the Legislature.

Justice BRENNAN joins this opinion.

JACOBS and BRENNAN, JJ., concurring in result.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.