47 N.J. Super. 196 (1957)
135 A.2d 555
ROSEMARIE KOPLIK, PLAINTIFF-APPELLANT,
v.
C.P. TRUCKING CORPORATION, ETC., ET ANO., DEFENDANTS, AND FREDERICK PATRIZIO, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 23, 1957.
Decided October 28, 1957.
*197 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Jesse Moskowitz argued the cause for plaintiff-appellant.
Mr. Emil W.A. Schumann argued the cause for defendant-respondent.
The opinion of the court was delivered by CONFORD, J.A.D.
As we see the issues in this case, the determinative inquiry is whether a negligence action is barred by the law of this state where the female plaintiff marries the defendant pendente lite.
The plaintiff was a passenger in an automobile being operated by the defendant Frederick Patrizio in New York State on June 17, 1955, when she was injured as a result of a collision between that car and a vehicle owned by the defendant C.P. Trucking Corporation, and operated by its employee, the defendant Angelo Nuzzo. This action, in which Patrizio was joined as a defendant on the basis of his alleged negligence in the operation of the car in which plaintiff was riding, was instituted January 11, 1956. Plaintiff and Patrizio, both residents of New Jersey, were married on June 6, 1956. Thereupon Patrizio moved for summary judgment on the ground that the marriage barred the continued prosecution of the action. The motion was denied November 9, 1956. Thereafter the case came on for trial January 28, 1957, and the motion for judgment was renewed on the same ground and again denied. The trial resulted in a mistrial. Thereafter a new motion for summary judgment was brought on before the same trial judge who had heard the original motion, and the court ruled it had been *198 in error in denying the motion previously and that the public policy and reported decisions of our courts precluded the maintenance of the action in this state after the marriage of the parties. Judgment was consequently entered against the plaintiff as to the defendant Patrizio. Leave to appeal was heretofore granted by this Division.
Under the statute law of the State of New York a wife is under no disability to sue her husband for damages in tort. Domestic Relations Law, § 57. But our own decisions enforce the common law immunity in that regard, and it is held that the so-called Married Women's Act (R.S. 37:2-1 et seq.) has not abrogated it. Kennedy v. Camp, 14 N.J. 390 (1954). In Wolfer v. Oehlers, 8 N.J. Super. 434 (Law Div. 1950), moreover, it was held that the principle of immunity applied notwithstanding the fact that the accident and the institution of the action both antedated the marriage. Consequently most of the argument before us has pertained to the question of the correct choice of law on the assumption that the law of the forum precludes, while the lex loci delictus permits recovery. The conflict of laws issue need not detain us, however, as we have decided, for reasons to be stated hereinafter, that the law of New Jersey does not bar recovery in the precise factual setting here presented. As an aside, we suggest that if this were an action instituted after marriage, and thus squarely implicating different substantive law in the state of forum and domicile, on the one hand, and of the accident, on the other, a respectable argument could be made for the proposition that the substantive law problem is more appropriately to be characterized as belonging in the field of family relations than that of tort and therefore properly to be resolved by the law of the domicile of the parties rather than that of the place of accident. See the treatment of the characterization problem in relation to choice of law in Wilson v. Faull, 45 N.J. Super. 555, 560, et seq. (App. Div. 1957), certification granted 25 N.J. 53 (1957); Lorenzen, "Characterization in Conflict of laws," 50 Yale L.J. 743, 748 (1941). In support of the particular conclusion *199 suggested above see Morris, "The Proper Law of a Tort," 64 Harv. L. Rev. 881, 885, 886 (1951); Stumberg, Conflict of Laws (2d ed. 1951), 206; Ford, "Interspousal Liability for Automobile Accidents," 15 U. Pitt. L. Rev. 397, 424 (1954); Cook, Logical and Legal Bases of Conflict of Laws (1949), 346; Rheinstein, "Michigan Legal Studies: A Review," 41 Mich. L. Rev. 83, 97 (1942); Cheatham and Reese, "Choice of the Applicable Law," 52 Col. L. Rev. 959, 975 (1952). But, as indicated, this problem is not reached if it is concluded that the correct substantive law determination for New Jersey matches that admittedly dictated by the New York statute.
The development of the reasons for our conclusion will be facilitated by outlining the thesis at the outset. Of the various philosophies advanced for the survival of the common law interspousal immunity from an action in tort, the public policy for prevention of marital disharmony is the only one having any remaining claim for rational justification. The Married Women's Act in this State, while not itself abrogating this immunity, has not legislated its continuance intact as at common law. A common law rule is subject to change or modification at the hands of a court of general original jurisdiction when it becomes apparent that it no longer serves, if it ever did, the public policy which gave it birth. No purpose or objective significantly grounded in prevention of marital discord can be found to be served by the involuntary abatement of an action in negligence brought by a passenger in an automobile against its operator by mere reason of the intermarriage of the parties pending the action. No tribunal in this State of higher authority than this court having heretofore held to the contrary, we are free to so adjudicate.
In the common law the general immunity of a husband from suit at the hands of his wife was doctrinally rooted in the theoretical identity of husband and wife. Kennedy v. Camp, supra (14 N.J. at page 395); Prosser, Law of Torts (2d ed. 1955), § 101, p. 670; 1 Harper & James, Law of Torts (1956), § 8.10, p. 643. As far as personal *200 and property rights were concerned, the legal existence of the wife was merged into that of her husband, the latter acquiring the right to possession and use of all of his wife's property, including choses in action. Ibid. The manifold respects in which the marriage relation at common law affected rights, privileges and immunities between husband and wife, and as to third persons, growing out of torts by and against a married woman, are well summarized in McCurdy, "Torts Between Persons in Domestic Relation," 43 Harv. L. Rev., pp. 1030, 1031-1033 (1930). As there stated (at p. 1033), "A combination of all these incidents made it impossible at common law for one spouse ever to be civilly liable to the other for an act which would be a tort if the relation did not exist."
The advent of the married women's acts throughout the states and in England, however, resulted in the recognition of the wife's separate legal identity and consequent separate legal estate in her own property. Prosser, op. cit., supra, at 672. Generally these acts have been interpreted as conferring upon the wife the separate ownership of her own property, including choses in action, the capacity to maintain and defend suits in her own name and without the joinder of her husband, and the capacity to contract in her own right. Ibid. However, a majority of the courts have refused to construe the statutes as permitting suits between spouses for personal torts. Prosser, op. cit., supra, p. 673. New Jersey is one of these states. See Kennedy v. Camp, supra.
It would appear, however, that interspousal tort immunity can no longer reasonably claim even a theoretical justification in the ancient idea of the jural unity of husband and wife. As seen, the husband no longer owns his wife's choses in action; even prior to the Married Women's Act he was subject to supervisory jurisdiction of the Court of Chancery in his contractual undertakings with his wife, see Woodruff v. Clark & Apgar, 42 N.J.L. 198, 200 (Sup. Ct. 1880); Bendler v. Bendler, 3 N.J. 161, 169 (1949); and the sweeping extent to which the law now treats a married woman as sui juris is demonstrated by Mr. Justice *201 Ackerson, dissenting, in Bendler v. Bendler, supra (3 N.J. at pages 174, 175). Adding this background to the liability of one spouse to another grounded in the criminal law and that involving the matrimonial relation directly (support, divorce, etc.), it is perfectly apparent that the legal unity of husband and wife is now hardly more than an anachronistic fiction, cf. Leith v. Horgan, 13 N.J. 467, 474 (1953), and see the concurring opinion of Mr. Justice Jacobs in Kennedy v. Camp, supra (14 N.J. at page 401), and that such collateral consequences as the law presently attaches in various respects to the marriage relationship are founded in a more realistic facet of public policy. The authorities make it clear that the policy implicated is society's interest in the preservation of the marital relationship, and, as a tributary thereto, the discouragement of connubial discord.
While the opinion in Kennedy acknowledges the place of the unity concept in the early development of the immunity doctrine, it is nevertheless there recognized that:
"The doctrine is generally sustained on the `sociological and political ground that it would introduce into the home, the basic unit of organized society, discord, suspicion and distrust * * *.'
"* * * the unity of the spouses * * * is interwoven into the law for the domestic peace and well-being that are conducive to the subsistence of the marriage relation * * *." Kennedy v. Camp, supra (14 N.J., at pages 396, 397).
While the notion that domestic peace will be enhanced by prohibiting interspousal tort suits has been criticized by some legal writers as unrealistic, particularly in areas commonly the subject of liability insurance, see Prosser, op. cit., supra (p. 674, n. 48), and rejected by a substantial minority of the courts, it nevertheless remains as the most frequently stated rationale, 1 Harper & James, op. cit., supra, p. 645, and certainly as the controlling rationale in this state. In addition to the excerpt quoted above from Kennedy, see Bendler v. Bendler, supra (3 N.J. at page 172): "The integrity of the marriage relationship is of primary concern to society"; Clement v. Atlantic Casualty Ins. Co., 13 N.J. *202 439, 445 (1953); Pennsylvania Greyhound Lines, Inc. v. Rosenthal, 14 N.J. 372, 388, 389 (1954).
The present-day policy justification for the common law rule of immunity in mind, we are led to the inquiry as to whether it is relevant in considering whether the subsequent intermarriage of persons who are adverse litigants in a pending automobile negligence action should involuntarily abate the action. The answer cannot, of course, be predicated upon an ad hoc determination based upon the likely effect of a continuance of the action upon the domestic tranquility of the particular parties. The question is whether the immunity should be modified, generally, in the circumstances stated. On the basis of reason and logic we think it should. If the pendency of such an action was no obstacle to the deliberate entry of the parties into the marital relationship itself in the first instance, we see no rational basis for the entertainment of a presumption that the continued prosecution of the action, patently contemplated when the parties married, will be substantially deleterious to that relationship. While that consideration would alone justify our conclusion, we point out that the views of those who insist that a realistic jurisprudence must take account of the general incidence of liability insurance in automobile cases and similarly commonly insured risks, Prosser, op. cit., supra, pp. 677, 678; 2 Harper & James, op. cit., supra, § 13.4, p. 767; McCurdy, op. cit., supra (43 Harv. L. Rev., at p. 1030); Peaslee, C.J., in Dunlap v. Dunlap, 84 N.H. 352, 150 A. 905, 914, 71 A.L.R. 1055 (Sup. Ct. 1930), supply added cogency to the effectuation of a modification of the rule of immunity to the limited extent involved in such a situation (apart, of course, from any specific consideration as to whether there was insurance in the case before us). Liability insurance obviously eliminates substantially the likelihood that serious friction between the parties will attend the prosecution of the litigation. Ibid.
In coming to a decision about this matter we ought to weigh the insubstantiality of the threat to domestic concord in the case before us against the increasingly emphasized *203 philosophy of modern jurisprudence that those hurt by the wrongs of others should have reparation  a viewpoint which has been steadily eroding obsolete notions of immunity. See Cloyes v. Delaware Tp., 23 N.J. 324, 328 (1957); Mr. Justice Jacobs, dissenting, in Lokar v. Church of the Sacred Heart, 24 N.J. 549, 555, et seq. (1957), and Mr. Justice Wachenfeld, concurring, in the same case (24 N.J. at pages 569, 570); cf. Seavey, Cogitations on Torts (1954), p. 4.
The courts have had no hesitancy in reshaping the common law to new thinking as well as to new conditions, when impelled by a strong sense that justice and the public welfare required it. Funk v. United States, 290 U.S. 371, 383, 54 S.Ct. 212, 78 L.Ed. 369 (1933); State v. Culver, 23 N.J. 495, 505, 506 (1957); Saco v. Hall, 1 N.J. 377, 383 (1949); Mr. Justice Jacobs, dissenting, in Lokar v. Church of the Sacred Heart, supra (24 N.J. at pages 567-569); Chief Justice Vanderbilt, dissenting, in Fox v. Snow, 6 N.J. 12, 21-25 (1950); Cowan, "Torts," 10 Rutgers L. Rev. 115, 119 (1955); Stoffer, "Work of Judicial System 1953-1954  The Supreme Court and Stare Decisis," 9 Rutgers L. Rev. 1-15 (1954).
A balancing of the competing societal counterweights appears to us to reflect a distinct preponderance of policy towards the allowance of the instant cause of action. Where the underlying policy of "domestic peace and felicity" is not factually implicated, the rule of immunity will not be mechanically applied by the courts. Pennsylvania Greyhound Lines, Inc. v. Rosenthal, supra (14 N.J. at page 388); Hudson v. Gas Consumers' Association, 123 N.J.L. 252 (E. & A. 1939); Leith v. Horgan, supra (13 N.J. at page 477); Clement v. Atlantic Casualty Ins. Co., supra. Where the reason for the immunity does not obtain, the case calls for appropriate modification of the rule. Hamilton v. Fulkerson, 285 S.W.2d 642, 645, 646 (Mo. Sup. Ct. 1955); Apitz v. Dames, 205 Or. 242, 287 P.2d 585, 594 (Sup. Ct. 1955).
*204 The only New Jersey case directly in point is Wolfer v. Oehlers, supra. The court did not consider the relationship between the immunity policy and the situation of a premarital tort and action. It regarded "the doctrine of identification" as the basis for preclusion of suit for torts during coverture. It applied the rule which concededly obtains in most other jurisdictions. See infra. For the reasons stated above, we consider the decision not persuasive, and it is overruled.
We take note of the fact that in Kennedy the Supreme Court stated (14 N.J. at page 397) that "for the same basic reason [prevention of domestic discord] liability for ante-nuptial torts is extinguished by marriage," citing Henneger v. Lomas, 145 Ind. 287, 44 N.E. 462, 32 L.R.A. 848 (Sup. Ct. 1896) and Gottliffe v. Edelston, [1930], 2 K.B. 378. We do not regard this observation as a considered affirmation of the merits of that aspect of the rule but only as a passing reference to the predominant view. It may be noted, in passing, that the reference to the point in the Henneger case was dictum, see Hunter v. Livingston, 125 Ind. App. 422, 123 N.E.2d 912, 914 (App. Ct. 1955), and, moreover, in respect to an action instituted after marriage, while the Gottliffe case was expressly overruled in Curtis v. Wilcox, [1948], 2 K.B. 474, on the ground that the female plaintiff's right of action was part of the separate estate she possessed prior to marriage, and the action one for its preservation, within the protection of the English Married Women's Property Act of 1882.
While the court, in Kennedy, made it clear that the unfettering provisions of the New Jersey Married Women's Act, R.S. 37:2-1, et seq., did not in terms "embrace actions between spouses in tort for negligence," and emphasized that R.S. 37:2-5 provides that nothing in the chapter contained "shall enable a husband or wife to contract with or to sue each other, except as heretofore, and except as authorized by this chapter," it is equally clear that this reference, deriving from the revision in 1877 of the general statutory law, Rev. 1877, p. 639, § 14, was in no proper *205 sense a legislative codification of the common law to the extent that it stood unmodified by the new substantive provisions of the act, but simply a precautionary disclaimer of intention to enact anything beyond such changes as were expressly provided for. The common law of immunity between spouses therefore continued and continues, subject to such changes and modifications in the common interest as are the prerogative of a court vested with the jurisdiction to apply the common law.
A survey of the authorities in jurisdictions which continue to adhere to the general immunity discloses that three have held it inapplicable to actions involving pre-nuptial torts, Hamilton v. Fulkerson, supra (Missouri); Shirley v. Ayers, 201 N.C. 51, 158 S.E. 840 (Sup. Ct. 1931); Carver v. Ferguson, 254 P.2d 44 (Cal. D. Ct. App. 1953). In the Hamilton and Carver cases, the action antedated the marriage. In Apitz v. Dames, supra, the Oregon Supreme Court held that the immunity was not operative as to intentional torts and intimated that it would not be applied to pre-nuptial torts of any kind. In Brandt v. Keller, 413 Ill. 503, 109 N.E.2d 729 (Sup. Ct. 1952), the court adopted the minority view permitting tort actions between spouses, generally, but the legislature in 1953 provided that neither spouse might sue the other for a tort "committed during coverture," L. 1953, p. 437, § 1, 1 Ill. Rev. Stat., ch. 68, § 1 (1953). It follows that in Illinois the law is that an action may be maintained for a premarital tort but not for one committed during coverture. As already noted, the present English view permits an action by a wife for a premarital tort, provided it is brought prior to marriage. Curtis v. Wilcox, supra. But the rule there being predicated on the Married Women's Property Act, it has been refused extension to an action wherein a male plaintiff married the defendant after institution of suit. Baylis v. Blackwell, [1952] 1 K.B. 154.
We cite none of the foregoing authorities (aside from the Curtis case) as logically supporting the view we have taken here, since, with the stated exception, they do not rely upon *206 the sequence of marriage following institution of action. We have merely assembled cases which, in result, are compatible with our conclusion. It is to be acknowledged that no case has been found adopting the ratio decidendi based upon the sequence of action and marriage, which, in our view, has seemed rationally determinative, always assuming the tenability and continued recognition of the "domestic harmony" justification for the general immunity.
As noted, most of the states which apply the general immunity do so regardless of whether the tort antedates the marriage. Generally the philosophy is that since the common law made no such distinction and the married women's acts left the general immunity untouched, there was no reason for a different result in that situation. Patenaude v. Patenaude, 195 Minn. 523, 263 N.W. 546 (Sup. Ct. 1935); Scales v. Scales, 168 Miss. 439, 151 So. 551 (Sup. Ct. 1934); Furey v. Furey, 193 Va. 727, 71 S.E.2d 191 (Sup. Ct. 1952); Carmichael v. Carmichael, 53 Ga. App. 663, 187 S.E. 116 (Ct. App. 1936). In most of the cases, moreover, the fact that the marriage followed the institution of the action has not produced a difference in result, none of the decisions, however, giving any consideration to the question as to whether the "domestic harmony" philosophy is germane in that situation. The following cases are illustrative. Staats v. Co-operative Transit Co., 125 W. Va. 473, 24 S.E.2d 916 (Sup. Ct. 1943); Tanno v. Eby, 78 Ohio App. 21, 68 N.E.2d 813 (Ct. App. 1946); Spector v. Weisman, 59 App. D.C. 280, 40 F.2d 792 (D.C. Cir. 1930); Webster v. Snyder, 103 Fla. 1131, 138 So. 755 (Fla. Sup. Ct. 1932). But note that in Shiver v. Sessions, 80 So.2d 905 (Fla. Sup. Ct. 1955), where the wife's death ensued from the husband's negligence, a wrongful death action was allowed on the basis that: "An immunity based upon the preservation of marital harmony can have no pertinence in this case" (at page 907); Lubowitz v. Taines, 293 Mass. 39, 198 N.E. 320 (Sup. Jud. Ct. 1936), relying upon the overruled English case of Gottliffe v. Edelston, supra.
*207 It is of interest that a number of writers have suggested an approach to liability for negligence inter conjuges which discards the "peace and harmony" philosophy but permits recovery for a premarital tort. It would deny an action for such acts of negligence only as occur in the course of a marital enterprise or arise out of family association (as where one spouse is a passenger in a vehicle being operated by the other), on the theory that the common interest and benefit justifies an assumption of the risk of the other's negligence. McCurdy, op. cit., supra (43 Harv. L. Rev., at p. 1055); Note: "Tort Liability Within the Family Area  A Suggested Approach," 51 N.W.U.L Rev. 610, 619 (1956); Sanford, "Personal Torts Within the Family," 9 Vand. L. Rev. 823, 846 (1956). While this approach would permit recovery in the instant case, we place no reliance upon it as we are bound by the adherence of our courts to the rationale founded upon the relationship of the maintenance of the action to the prevention of marital disharmony. For the reasons already stated, we consider that a disposition of the problem before us geared to that criterion precludes the abatement of this action.
Reversed.