61 N.J. Super. 270 (1960)
160 A.2d 507
JANET BORG TOMKOVICH, PLAINTIFF, AND MICHAEL TOMKOVICH, JR., HER HUSBAND, PLAINTIFF-APPELLANT,
v.
PUBLIC SERVICE COORDINATED TRANSPORT, ETC., ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 21, 1960.
Decided May 2, 1960.
*272 Before Judges CONFORD, FREUND and HANEMAN.
Mr. Herbert C. Klein argued the cause for appellant (Messrs. Budd, Larner & Kent, attorneys; Mr. Samuel A. Larner and Mr. Herbert C. Klein, of counsel).
Mr. Louis F. Stein, Jr., argued the cause for respondents (Mr. Walter S. Cramer, of counsel).
The opinion of the court was delivered by HANEMAN, J.A.D.
Plaintiff Michael Tomkovich, Jr. appeals from a judgment in favor of defendants, Public Service Coordinated Transport and Frank Mucaro, on a counterclaim for contribution under N.J.S. 2A:53A-1 et seq., the Joint Tortfeasors Contribution Law, entered on October 8, 1959 by the Essex County District Court.
On November 17, 1957 an automobile owned and operated by Tomkovich was involved in a collision with a Public Service bus operated by defendant Mucara. As a result of said accident Janet Borg, an invited passenger in the Tomkovich automobile at that time, sustained personal injuries. Subsequently, Janet Borg and Tomkovich were married. Janet thereafter instituted suit against defendants herein, and her husband sued per quod. Defendants, alleging contributory negligence on the part of Tomkovich, counterclaimed against him for contribution. A motion to dismiss the counterclaim was denied.
After trial, the jury returned a verdict against defendants in favor of Janet Borg Tomkovich in the amount of $1,200 *273 and against her husband on defendants' counterclaim, concluding that he had been guilty of contributory negligence.
We are confronted with a new facet of the problem of interspousal immunity under the Joint Tortfeasors Contribution Law, N.J.S. 2A:53A-1 et seq. The specific question raised by the present appeal is whether the marriage of Janet Borg and Michael Tomkovich, Jr. after the occurrence of the accident but before the institution of suit for damages arising therefrom bars a counterclaim for contribution on behalf of the defendants as against Tomkovich, the husband.
At the outset, the well-established, though oft-criticized, common-law rule that one spouse may not, during coverture, maintain an action against another for either an antenuptial tort, Koplik v. C.P. Trucking Corp., 27 N.J. 1 (1958), or a postnuptial tort, Kennedy v. Camp, 14 N.J. 390, 395 (1954)  see Bendler v. Bendler, 3 N.J. 161 (1949), must be recognized. This is bottomed upon both the legal identity of husband and wife and the "sociological and political ground that it would introduce into the home, the basic unit of organized society, discord, suspicion and distrust, and would be inconsistent with the common welfare." Kennedy v. Camp, supra, 14 N.J., at page 396.
Our Supreme Court has had before it two cases concerning contribution from a spouse of a plaintiff who allegedly was a joint tortfeasor, involving, however, situations different on the facts from those sub judice, Pennsylvania Greyhound Lines, Inc. v. Rosenthal, 14 N.J. 372 (1954); Kennedy v. Camp, supra. These cases, in the light of the expanded concept of interspousal immunity reflected by the Koplik case, supra, point to the correct solution here.
It is well to keep in mind several fundamental rules concerning joint tortfeasors' liability under the statute while analyzing Pennsylvania Greyhound and Kennedy. The right to contribution under the statute is an inchoate right arising upon the commission of joint tortious conduct and becomes consummate and enforceable by one of the tortfeasors *274 when payment is made by him beyond his pro rata share of a judgment arising out of such tortious conduct. Sattelberger v. Telep, 14 N.J. 353 (1954). And it is an essential element of recovery under the statute that the parties be "joint wrongdoers under a joint or several liability to the injured person for the injurious consequences of the wrongful act, neglect or default reduced to judgment." (Emphasis supplied.) In short, the "very essence of the action of contribution is `common liability.'" Kennedy v. Camp, supra, 14 N.J., at pages 397, 399. Cf. Adler's Quality Bakery v. Gaseteria, Inc., 32 N.J. 55 (1960).
In Pennsylvania Greyhound, Wynne Goldstein suffered personal injury as the result of a collision between the automobile operated by the defendant Irving Rosenthal, in which she was riding as an invited passenger, and a motor bus owned by the plaintiff Pennsylvania Greyhound. On May 22, 1951 she brought suit in the Superior Court against Rosenthal, the owners of the automobile in which she was riding, Pennsylvania Greyhound, and one Miller, the operator of the bus. There was a verdict of $21,000 against Rosenthal, Pennsylvania Greyhound and Miller, and judgment thereon March 26, 1952. The judgment entered at the trial dismissed the owners of the Rosenthal vehicle, and they dropped out of the case. Pennsylvania Greyhound and Miller appealed to the Appellate Division, and on April 9, 1952 posted a surety bond of $23,000, conditioned for the payment of the judgment and costs should the appeal be dismissed or the judgment affirmed. The Appellate Division affirmed the judgment, and Pennsylvania Greyhound and Miller paid the judgment and costs to Goldstein on December 19, 1952. On January 14, 1953 Pennsylvania Greyhound brought action against Rosenthal for contribution under the Joint Tortfeasors Contribution Law. However, on February 1, 1953, before judgment was rendered in the contribution suit, Miss Goldstein and Rosenthal were married, and Rosenthal asserted that by reason of the resulting husband-wife relationship he was not a joint tortfeasor. The *275 trial court granted plaintiff's motion for a summary judgment. The Supreme Court, in finding for Pennsylvania Greyhound, held, inter alia (14 N.J., at page 388):
"The considerations of marital unity and domestic peace and felicity underlying the ancient policy interdicting actions between spouses, Bendler v. Bendler, 3 N.J. 161 (1949), have no place here. The payment of the judgment in tort which gave rise to the cause of action for contribution extinguished the defendant Rosenthal's liability under the judgment to the plaintiff Goldstein and the latter's cause of action in tort which had merged in the judgment; and their subsequent marriage could have no effect whatever on the accrued right of action for contribution under the statute. This is axiomatical truth.
The enforcement of contribution would not trench upon the policy of the rule of Bendler v. Bendler, cited supra. At the time of the satisfaction of the judgment in tort, there existed between the plaintiff and the defendant in this proceeding the common liability in tort which is basic to the statutory right of contribution, as a means of equalizing the common burden. To hold that the marriage of the judgment plaintiff and the judgment defendant Rosenthal, after the satisfaction of the judgment, served to defeat the accrued right of contribution would be to ignore the spirit and outstanding policy of the statute." (Emphasis supplied.)
It is seen that in Pennsylvania Greyhound the court concluded that the right of action against the joint tortfeasor had become consummate by judgment and payment thereof, before the marriage of the joint tortfeasor to the injured party. Additionally, there was no reason to invoke the public policy which disables one spouse from bringing suit against the other at that stage of the proceedings as the spouses would not be placed in conflicting positions by the litigation for contribution and that suit would have no deleterious effect upon the desired domestic tranquility in the sense of pitting the spouses against each other in a tort litigation. The issue of liability for damages to the wife arising out of the accident had been completely litigated, the amount of damage sustained by the plaintiff had been reduced to a final judgment, and there was no need to litigate any adverse factual issues between the husband and wife.
*276 In Kennedy, Viola Camp, wife of William, had recovered a judgment in tort against the plaintiffs Kennedy, resulting from the collision of an automobile owned and operated by William V. Camp, in which Viola was a passenger, with an automobile owned by Benjamin Kennedy and driven by his wife Harriet. William Camp had joined in his wife's action per quod and to recover the damages to his car. Benjamin Kennedy had interposed a counterclaim for injuries to his vehicle. The jury disallowed the claims of Camp and Kennedy. Thereafter, the Kennedy instituted suit against William Camp for contribution. The trial court granted Camp's motion for a summary judgment. The Supreme Court on appeal affirmed, holding that an action for contribution is founded on common liability in tort and, as William was not a joint tortfeasor with the Kennedys as against Viola, therefore, the plaintiffs were not entitled to contribution. The court, 14 N.J., at page 395, said in part:
"N.J.S. 2A:53A-3, comes into being when injury or damage is suffered by any person in consequence of `the wrongful act, neglect or default of joint tortfeasors,' as so defined, and the injured person recovers `a money judgment or judgments for such injury or damage against one or more of the joint tortfeasors, either in one action or in separate actions, and any one of the joint tortfeasors pays such judgment in whole or in part'; the recovery is to be had from `the other joint tortfeasor or joint tortfeasors for the excess so paid over' the payor's `pro rata share.'"
In Kennedy, although Camp could be considered a joint tort-wrongdoer, the second vital requirement for recovery under the statute, that there be joint or several liability to the injured judgment plaintiff for the tortious conduct, enforceable by action, was absent. See Sattelberger v. Telep, supra. The right to contribution had not become consummate and could not become consummate during coverture because of the interspousal disability to sue. Although the husband might be considered a joint wrongdoer, he was not, by virtue of that disability, jointly liable to his wife, and recovery could not be had against him under the statute.
*277 In the matter sub judice the plaintiff wife is barred from suing her husband during coverture because of the interspousal disability notwithstanding the fact that they were not married when the accident occurred. Koplik v. C.P. Trucking Corp., supra. The defendant husband, therefore, was not "jointly liable" to his wife when the claim for contribution was asserted. It should again be noted by contrast that the husband in Pennsylvania Greyhound remained "jointly liable" to the injured party therein, i.e., the marriage did not occur until after judgment was recovered against all of the joint tortfeasors and was paid by less than all of them. It necessarily follows that the husband herein is not liable for contribution. To conclude otherwise would be to permit the husband and wife to be placed in conflicting and adversary positions, at least to the extent of the amount of any recovery by the wife for injuries sustained in the accident. Under the hypothesis of recovery of contribution it would be to the husband's financial interest to negate the wife's cause of action and to minimize his wife's injuries so that he might either be relieved of contribution or that his contribution to any judgment would be in the lowest possible amount. This would constitute a position adverse to the wife's interest in a successful prosecution of her cause of action for the highest possible amount. Clearly, the trial of this issue would tend to have a disruptive effect upon the harmonious marital relationship within the philosophy of the Kennedy and Koplik cases, supra.
The court in Cooper v. Philadelphia Dairy Products Co., 34 N.J. Super. 301 (Law Div. 1955), relied upon by the defendant in the trial court, was not faced with the policy considerations upon which interspousal disability has been developed in this State. Furthermore, Cooper preceded our Supreme Court's decision in Koplik, supra, which brings into even clearer focus the policy considerations involved in preventing interspousal litigation. The policy of promoting domestic peace and well-being is
*278 "* * * inherent in the Contribution Law. There is no right of contribution unless there be joint wrongdoers under a joint or several liability to the injured person for the injurious consequences of the wrongful act, neglect or default reduced to judgment. This by clear and explicit provision. And if the terms were less certain in meaning, a legislative intention to modify this ancient common-law concept of the oneness of spouses cannot rest upon doubtful implication. An interpretation of the Contribution Law that would sustain contribution in these circumstances would afford the means of rendering the husband indirectly liable to his wife in tort for negligence, and thus to transgress this salient principle of the common law that interdicts such intrusions upon marital unity and domestic contentment." Kennedy v. Camp, supra, 14 N.J., at pages 397, 398.
For a case treating at length the fact situation presented herein, both in the light of New Jersey authorities and a series of similar Minnesota authorities, see Koenigs v. Travis, 246 Minn. 466, 75 N.W.2d 478 (Sup. Ct. 1956). The Minnesota court concluded that since a husband is not liable to his wife for personal torts committed before coverture, and since common liability is the very essence of an action for contribution, the husband is not liable for contribution.
Reversed.